WRIGHT AND WIFE AND CHARLES E. MILLER *against* EZRA W.
MILLER.

8    9
144   62
———
8    9
157  278

A conveyance of real estate made in 1809 to a trustee, with power with the grantor's consent during her life to lease or sell, and from the proceeds after defraying the expenses of the trusts, to pay over the residue for the reasonable support of the grantor as *she may require the same* during her natural life, and to accumulate the surplus, and at her death to apply it to the bringing up, education and support of such child or children as she should or might have during the life of such child or children, with remainder over in default of children, gave to the grantor only an equitable estate to the extent of the trust expressed for her use. It did not vest in her the equitable fee simple, and she had no power to extinguish the trust by conveyance to a third party.

Upon the grantor's having children they became entitled to a vested interest in the trust estate, and to bring an equitable action to avoid a fraudulent disposition of it by the grantor and trustee.

Equity will entertain a suit to vacate a decree obtained by collusion between trustees and the tenants in possession of a trust estate to defeat the rights of persons entitled to equitable interests therein in remainder.

In this action, the settler in a deed of lands conveyed in trust to a trustee to be managed and the income and proceeds to be paid to her for her use during her life, with remainder to be expended for the support and maintenance of her children, and remainder over, after the birth of children, joined with her husband in a conveyance of the trust estate to third parties, who by collusion

SEL. IV.—:2

Wright *against* Miller.

filed a bill against the grantor's trustee and children, and obtained a decree avoiding the trust, and then reconveyed the land to the settler's husband. It was adjudged that the decree be declared void, the property restored to the trust, and that the husband account to a new trustee.

On the 12th day of September 1809, Hannah Ryerson, the mother of the plaintiffs Elizabeth Ann Wright and Charles Miller, then being a single woman and entitled to an undivided interest in a large estate left by her grandfather Samuel Ellis, by indenture reciting that she was unable to take the care, burthen, and management thereof, except by a trustee, and that she was desirous to make partition and to divide and adjust her claim thereto, with the other heirs and devisees of Samuel Ellis, and "to make provision for a suitable and permanent support and maintenance out of the same for herself during her natural life, free from the control of any other person or persons, and to secure the residue to such children and heirs as she might have, and afterwards to the children of her brother Samuel E. Ryerson and their heirs, in cases he should die without leaving any child or children her surviving, she conveyed to Robert Campbell her interest and all her estate:

" Upon trust, forthwith, or as soon as convenient, with consent of Hannah in her lifetime, or after her decease, absolutely, to sell and dispose of so much of the said premises, or any part thereof, as shall or may be necessary to defray all expenses accrued or to accrue for bringing up, education, clothing or support of the said Hannah, or the partition, improving, altering or amending the said estate, or any part thereof, *or for the fulfillment of the purposes hereby intended*, as shall or may become necessary *or advisable*, or to lease, farm let, or demise the same or any such part thereof, for such term or terms of years or otherwise, as the said R. Campbell or his *heirs* shall think necessary or proper; and, forthwith after any such sale or lease, to pay, apply, and dispose of the moneys thence arising, in the first place for the payment of expenses of the trusts through-

Wright *against* Miller.

out (including commissions), as also of partitions, ex-changes, sales, leases, buildings, repairs or improvements for the benefit of the said Hannah. And secondly, in trust, out of such purchase moneys and rents, forthwith from time to time *pay over* the residue thereof, for and towards the reasonable support and maintenance of her, Hannah, *as she may require the same*, upon her own separate receipt only, and for her own use, free from any control of any husband she may hereafter marry, during her natural life; and *as to the residue* thereof, IF ANY THERE SHALL BE after such deductions and payments as aforesaid, then upon *trust*, from time to time, and so often as may be practicable, to place the same at interest upon security, for the use and benefit of herself and her heirs as hereinafter mentioned."

And after her death, then upon trust " to pay and apply the residue of the said moneys, rents and proceeds arising by such sale or sales, lease or leases, as aforesaid, occasionally for and towards the bringing up, education and support of such child or children as she shall or may have, in a just and ratable proportion, as may be required, during the life of such child or children, if she shall leave any child or children her surviving. And lastly, in case she shall die without leaving any child or children her surviving, then, and in such case, in trust that he and his heirs do and shall pay *the residue* of the money arising by such sale or sales, lease or leases as aforesaid, and all the net proceeds of the aforesaid estate, to the child or children of Samuel Ellis Ryerson, her brother, or their heirs by descent, then living, in an equal and ratable proportion, according to the rules prescribed by the statute of distribution of intestates' estates within the state of New York, if any such children or heirs of such children by descent *only* be then living, and in failure thereof then that R. Campbell the trustee, or his heirs, retain the same to his and their own use for ever, without any further account thereof whatsoever."

On the 28th of January 1810, she married the defendant

Ezra W. Miller, the respondent, by whom she had four children, the plaintiffs Mrs. Wright and Charles Miller, and the defendants Ezra and Joseph Miller, all born prior to 1820. In 1813, Ezra W. Miller her husband, for the purpose of extinguishing the trusts, under the advice of counsel, and with the approbation of Campbell the trustee, conveyed a part of the real estate by a deed in which his wife joined to Albert A. Westervelt. This was done without consideration, and simply in order to enable Westervelt to file a bill in chancery against Campbell the trustee, Miller and wife, and their infant children, in which he should claim that he was a *bona fide* purchaser of the land without notice of the trust deed to Campbell, and entitled to have it decreed void as against him. Such a bill was filed, Miller was made guardian for his infant children, and answers put in by him on behalf of himself and his wife, and as guardian, admitting the facts alleged in the complaint. A decree was obtained in the action, December 27th 1815, declaring the trust void against Westervelt, and on the 28th of March 1816, he reconveyed the lands to Ezra W. Miller in fee. The remainder of the real estate was for a similar purpose conveyed to William DeGarmo in 1817, and upon a decree being obtained declaring the trust void as against him, it was by him reconveyed to Ezra W. Miller, on the 26th of August 1820. In 1822, the marriage between Ezra W. Miller and Hannah his wife was dissolved. A partial provision was made by him for her support, but in the disposition of the questions decided in this court, the facts in relation to the manner in which the dissolution of the marriage took place, and the provision for Mrs. Miller's support became immaterial. In neither of the decrees upon the bills filed by Westervelt and DeGarmo, was provision made for permitting the infants after their arrival at full age to show cause against them.

In 1836, after the plaintiffs attained their full age, they filed their bill in this action before the court of chancery in the first circuit, alleging the foregoing facts, and that the

conveyances to Westervelt and DeGarmo, and the proceedings thereon, in the court of chancery were all collusive and fraudulent devices for the purpose of placing all the estate in the hands of Ezra W. Miller, as his individual property, free and discharged of the trusts upon which it was conveyed to Campbell, and praying an affirmance of the trusts, the appointment of a new trustee, and an accounting by Campbell and Ezra W. Miller. The facts in relation to the conveyance in trust to Campbell, the conveyance to Westervelt and DeGarmo, and the chancery suit and reconveyance to Ezra W. Miller, were admitted in the answers, but it was insisted that the plan adopted for extricating the estate from the trusts, was adopted in good faith and under the advice of eminent counsel by whom it was proposed and carried into effect. There were a variety of facts not above stated alleged in the pleadings, and in relation to which evidence was given in the cause, which became unimportant in the disposition of the case.

The cause was heard upon pleadings and proofs before the Hon. Lewis H. Sandford, then assistant vice chancellor of the first circuit and a decree was afterwards made by him as vice chancellor on the 17th day of May 1844, declaring the decrees made in the suits brought by Westervelt and DeGarmo, fraudulent, null and void, as against the children of Mrs. Miller; that all the lands which under the conveyances of Westervelt and DeGarmo, were conveyed to Ezra W. Miller, were still subject to the original trusts; and requiring him as trustee to account for the proceeds of all such as had been sold by him, with proper allowances for moneys disbursed by him in the care of the estate, and moneys paid over to Mrs. Miller. The opinion delivered by the vice chancellor is found in the report of the case in 1 *Sand. Ch.* 103. From this decree Ezra W. Miller, appealed to the chancellor, and the appeal was ultimately heard before the supreme court of the second district, and a decree was there made on the 13th of November 1848, reversing the decree of the assistant vice chancellor, and

dismissing the bill of complaint, upon the ground that by the original conveyance by Hannah Ryerson to Campbell, the absolute power of disposal of the property reserved by her, conferred upon her the equitable fee simple, absolute and unqualified, and rendered the intended limitation over for the benefit of her children null and void, and that therefore the plaintiffs had no interest to protect and no title to bring their action.

The plaintiffs appealed from the decree of the supreme court.

*J. A. Lott*, for appellants.

*C. O'Conor*, for respondents. I. By the intention and effect of the conveyance in trust to Campbell, Hannah Ryerson, afterwards Mrs. Miller, the settler, reserved to herself, by the aid of her trustee, the absolute ownership and entire dominion over her property. Such ownership and dominion were not impaired or lessened by the provision, that whatever might chance to remain at her death, unappropriated by her, should go to other persons.

1st. The details of the trusts declared, show that she intended to reserve to herself the entire ownership, and actual dominion over the *whole* property. 1. Her disclaimer of ability to manage is qualified, except by "*a trustee to act for and on her behalf.*" 2. Her trustee was not to sell except by her consent. 3. She was to be the *sole judge* of her scale of expenditure. Investing her trustee with a discretionary power to curtail her expenditures, would have been singularly inconsistent with her known self will, and her expressed intent to be "free from the control of any other person or persons;" especially when it is considered that the trustee himself had a contingent interest in swelling the amount of the remainder. 4. She did not confine her expenditures to the income. The principal was also devoted to her use. 5. The direction was not to *apply* to her support, but to pay over to her. She intended

Wright *against* Miller.

to support and maintain her children *during her own life.* She intended to retain the power of giving them portions and establishing them in life.    6. She was at liberty to demand the *whole*, especially as there was an equitable conversion of the whole into *money*. (*Leigh & Dalzell on Eq. Conversion*, 51, 57;   *Kane* v. *Gott*, 24 *Wend. p.* 641.) 7. She doubted whether "*the residue*" intended for her children would embrace anything.   8. "*Residue*" and "*what may remain*," are synonymous terms. (11 *Vesey*, 331; 2 *Atk.* 170.)

2d. The intimation that the settler's *support and maintenance* was an object of the settlement, has no effect to restrain her interest in, or power over the fund.   1. The *motive* or *reason* for a *gift* does not lessen the interest of the donee.   *A fortiori*, of a settler's investment to her own use.   (*Benson* v. *Whittam*, 5 *Simons*, 22; *Cole* v. *Wade*, 16 *Vesey*, 44.)   2. A recital will not control the subsequent limitations.   (3 *Cases in Chy.* 101, 102.)   3. To a common intent, the words "*support and maintenance*" imply every expenditure that can arise in life, to supply any need, or to gratify any human desire.  (*Burr* v. *Burr*, 7 *Hill*, 209, 222, 230.)   4. The phrase is of very common occurrence, and is mere verbiage.   "*Reasonable*," "*permanent*," and "*suitable*," are all phrases of the same character.

3d.  Where *no* special interest or title is limited to a party who has a full power of disposition and control, i. e. a power to spend or waste the whole, such party takes the absolute property, and all remainders of *what may chance to be left* are nugatory and void.   Where a special interest, for life or any other term, *is* expressly limited to the first taker, and such first taker has an absolute power of disposition extending to the whole fund, the remainders are *precarious*, like the expectancy of an heir apparent, and take effect only in the event that the first taker omits to exercise his power.  (*McLean* v. *Macdonald*, 2 *Barbour S. C. R.* 537;  *McDonald* v. *Walgrove*, 1 *Sandford Ch.*, 275.) So ruled also, in a class of cases where a recommendatory

Wright *against* Miller.

form was assumed to be imperative, as it often is. (2 *Vesey Jr.* 532; 3 *Vesey Jr.* 7; 19 *Vesey* 662; 11 *Vesey*, 205; 2 *Cox*, 351; 2 *M. and Keene*, 197, 10 *Simons*, 6.)

II. If there were any limitations in the trust-deed beyond creating in the trustee a mere tenancy of the trust fund at the will of Mrs. Miller, then she was a tenant in tail.

The greatest incongruities would result from narrowing the word "*children*" so as to make them take as *purchasers.* It would pass the estate over, although there were grandchildren, in case the children should die before their mother. (*Adams* v. *Adams, Cowper*, 651. *Brudenell* v. *Elwes*, 7 *Vesey*, 381; 1 *East*, 455,) and if they took at all, they could only take an estate for life. *Expressum facit cessare tacitum.* (*White* v. *Collins*, 1 *Comyn's R.* 298, 301). Indeed it is impracticable to give effect to any intent reasonably imputable to the settler, except by construing "*child or children*" as *nomen collectivum*, taking in all descendants; and then the limitation would give an estate-tail to Mrs. Miller, the first taker. The ulterior remainders to S. E. Ryerson's issue or the trustee, being limited upon the failure of her issue *at her death*, is no impediment to the construction of a fee-tail in her. There is no difficulty in adjudging an estate-tail upon words which give it, though there should be *no* remainder given over. It is only when an estate is to be *implied* in the first taker, merely from the structure of the *remainder* itself, that these words are important. (*Doe* v. *Goldsmith*, 7 *Taunton*, 209). There may be a limitation by way of executory devise in a will, or a springing use in a deed, limited to take effect, not upon the natural termination of the estate-tail, as required in the limitation of remainders in conveyances at common law, but upon some collateral circumstance abridging the first estate.

If Mrs. Miller took an equitable estate-tail, it would give her immediately an absolute interest in the whole property, whether it is to be regarded as realty or personalty. (*Paterson* v. *Ellis*, 11 *Wend.* 259.)

Wright *against* Miller.

III. Mrs. Miller had an absolute power of appointment or an equitable fee-tail. Upon either construction she was, in effect, absolute owner; and having herself conveyed her whole estate, and Campbell, the trustee, having, by her consent, confirmed such conveyance, Ezra W. Miller holds by a title which is unimpeachable at law or in equity. (*Jacques* v. *Meth Ep. Church*, 17 *John.* 548; *Jackson* v. *Stevens*, 16. *Johns* 110, 111.)

IV. The imputations of fraud in the original chancery proceedings are all founded upon mistake.

1st. Equitable estates-tail were conveyed in England by means of a common recovery to a purchaser, who then filed a bill in equity, and compelled the trustee to convey the legal estate to him. (*Bridges* v *Bridges*, 3 *Vesey*, 126, cited in 18 *Vesey*, 418; *Crabb*, §§ 1857, 1861, 1890; 1 *Spence's Eq. Jur.* 506.)

2d. It has been thought that a decree in equity was the more apt procedure for this purpose. It might well be resorted to here, since estates-tail were abolished. (*Jickling*, 125, *note x.*)

3d. At the time Messrs. Harrison and Munroe advised the proceedings in chancery, it was conceived that a voluntary grantor had, in effect, the power of revocation, as of course. It was the received law, that a purchaser for value could vacate the deed, even though he had notice. (4 *Kent's Com.*, p. 463, *note d; Cathcart* v. *Robinson*, 5 *Peters*, 279.)

4th. It was doubted three hundred years ago, whether property could be honestly and conscientiously transferred by means of a legal fiction; but it was then settled in the affirmative. (*Doctor and Student, chap.* 26, *page* 69.)

JEWETT, J. Both of the courts below came to the conclusion, that the validity of the deed of trust, executed by Hannah Ryerson before her marriage with Ezra W. Miller, to Robert Campbell, can not be questioned by Miller, on the ground of fraud as against him, and in that I can see no ground to differ with them

SEL. IV.—3

The assistant vice chancellor, as I think, clearly showed by his very able opinion, that the sales of portions of the trust property, to Westervelt and De Garmo were not made in good faith, but for the sole purpose of vesting the title in Miller discharged of the trusts created by the deed to Campbell, and that the suits respectively, in chancery, were brought by collusion with Miller, and at his suggestion, and that the decrees were fraudulently obtained, and therefore void as against his children.

The supreme court, although it differs with the assistant vice chancellor on that point, agrees with him in the opinion that the omission to insert, in the decrees, a day for the infant defendants to show cause after they became of full age was erroneous, and that that error might be examined, on a bill of review, or on an original bill; so that if there was no positive fraud shown in obtaining the decrees, yet if the facts on which they were obtained did not warrant them, they might claim relief from them in this suit against Ezra W. Miller, and I entertain no doubt as to the correctness of that conclusion. The supreme court held that Mrs. Miller by her deed to Campbell, retained the absolute power of disposal of the property conveyed for her own benefit; and that conferred upon her the equitable fee simple, absolute and unqualified, and rendered the intended limitation over for the benefit of her children, qualified as it was, null and void. If that is the true construction of the declaration of trust contained in the deed to Campbell, the Supreme Court was right in respect to the consequences which it held followed. Mrs. Miller would have such an estate, and the limitation over for the benefit of her children would necessarily be void, because it would be inconsistent with her absolute property.

The reason assigned by Mrs. Miller for executing the conveyance to Campbell, as contained in its recital, was her inability to take the care, burthen and management of the estate of which she was seized, other than by the ap-

Wright *against* Miller.

pointment of some suitable person as a trustee, to act for her and on her behalf. The objects which she manifested a desire to attain by making such conveyance, were: 1st. A partition of the lands which she held in common with others. 2d. To make provision, out of said lands, for a suitable and permanent support and maintenance *for herself during her natural life*, free from the control of any other person, or persons, and to secure the residue, if any there should be, to such children and heirs as she might have, and afterwards to the children of her brother, Samuel E. Ryerson, and their heirs, in case she should die without leaving any child or children her surviving. And failing a child or children of her brother, then the residue to go to the trustee and his heirs.

To accomplish her purposes, she declared in the conveyance the trusts upon which it was made, in substance as follows:

That her *trustee*, as soon as conveniently might be, in his discretion, should, *with her consent, during her lifetime*, or after her decease, either, absolutely sell, or lease for a term or terms of years, or otherwise, as he should think proper, *so much and such parts* of the premises conveyed to him, in the manner described, as should be necessary or advisable, to defray all expenses already accrued, or thereafter to accrue, *for or towards the bringing up, education, clothing or support of Mrs. Miller during her natural life; and for or towards the partition, improving, altering, or amending the premises conveyed, or any part thereof, or for the fulfillment of the purposes thereby intended;* and that her said trustee should forthwith after any such sale or sales or such lease or leases, pay, apply, and dispose of the moneys arising therefrom; in the first place: Towards the payment of all costs, charges and expenses incurred by him, for and towards the execution of the trusts created by said deed (including his commissions), as also the expense of all partitions, exchanges, sales, leases, buildings, repairs or improvements, made to or put upon such estate,

towards a settlement of the same for the benefit of Mrs. Miller. And secondly, That her said trustee, after the payment of all such costs, &c., and all such repairs and improvements, &c., before mentioned, out of the said purchase moneys and rents, should forthwith, from time to time, pay over, during her natural life, so much of the residue thereof, for and towards her *reasonable support and maintenance, as she might require the same,* upon her own separate receipt only, and for her own use, free from any control of any husband she might thereafter marry.

And as to the residue of the moneys so arising from sales and leasings, if any there should be, upon the further trust that said trustee should from time to time, and as often as it might be practicable, put and place the same out at interest upon certain security mentioned, for the use and benefit of Mrs. Miller during her lifetime, and for the use and benefit of her heirs after her death, as thereinafter mentioned; or to invest the same with the surplus interest from time to time arising therefrom, in some good, profitable public stock, to be approved as before stated in respect to the securities to be taken; and after the death of Mrs. Miller, then, upon the further trust, that as soon as conveniently might be, the trustee should pay and apply the residue of said rents and proceeds arising from such sale or sales, lease or leases, occasionally for and towards the bringing up, education and support of such child or children as she should or might have, in a just and ratable proportion, as might be required during the life of such child or children, if she should leave any child or children her surviving. And lastly, in case Mrs. Miller should die without leaving any child or children her surviving, then in trust that the trustee should pay the residue of said money, and all the net proceeds of the said estate to the child or children of Samuel Ellis Ryerson, the brother of Mrs. Miller, or their heirs by descent then living, in equal and ratable proportion, according to the rules prescribed by the statute of distribution of intestates' estates within

this state, if any such children or heirs of such children by descent only be then living, and upon failure thereof, then the said trustee or his heirs were to retain and keep and apply the same to his and their own use forever, without any further account thereof. If, then, we regard this declaration of trust by Mrs. Miller as the disposition of her lands, conveyed to Campbell, as we must (4 *Kent,* 303), can we see from the language employed any intention on her part to reserve to herself an *absolute power of disposition* of the property, or any part thereof, for her own use? For the intent of the settler in the creation of trusts, is what the courts look to, and not to any particular form of words; and that is to be carried into effect, unless it contravenes some public policy of the law. (*Lewin on Trusts,* 137.)

The deed and declaration of trust in this case were made by a young woman, the owner of undivided parts, as a tenant in common with others of a valuable real estate; expecting soon to be married, and contemplating, in that event, the probability of having children; unable to take the care and management thereof, except by a trustee to act in her behalf; evidently desiring to exempt it from the control of such person as she should marry, and in the first place to subject so much thereof, or its proceeds arising from sales or leasing, from time to time, as should be sufficient for her support and maintenance during her life, free from the control of her husband or any other person, after the payment of the costs and expenses and commissions, &c., of executing the trust; and in the second place, after her death to apply all the residue of the property and its proceeds for and towards the bringing up, education and support of her children, in a just and ratable proportion, as might be required during the life of such child or children, if she should leave any her surviving, and then to go to their heirs. And if she should die without leaving any child her surviving, then in trust, as to the residue, for the child or children of her brother, S. E. Ryerson, or

their heirs, and failing issue of her brother, then such resi-due to go to the trustee, Campbell, absolutely.

Mrs. Miller, so far as I can discover, manifested no intention or wish to reserve or retain any power of disposition of her property, as it then existed; but intended that it should be sold or leased by her trustee from time to time during her life, in his discretion, and that he, from time to time, should, out of the proceeds arising from the sales, rents and income, pay to her so much as should be required to defray the expenses of her reasonable support and maintenance, upon her own separate receipt, free from the control of any husband she might thereafter marry. And for that purpose she authorized her trustee to sell or lease the whole or any part of the property, in his discretion, from time to time, and to make conveyances therefor. Her interest is in the proceeds of the sales and the rents and income of investments, merely, and limited in amount, sufficient to provide for her a reasonable support and maintenance during her life.

The limitation over for the benefit of her children, is therefore valid. It is essential to the execution of a trust that the subject should be certain. If the settler in this case intended to reserve to herself the power at her pleasure, to dispose of the property which she committed to her trustee to manage, and that the intended limitation over, extended only to what, if any thing, happened to remain of this property at her death undisposed of by her, then it would be void. But her power of disposition was limited to so much of the proceeds of the property only, as was sufficient to defray the expenses of her reasonable support and maintenance during her life. (*Horwood* v. *West* 1 *Simons* v. *Stuart*, 387.)

The case of *The Attorney General* v. *Hall* (*Fitsgibbon Rep* 314), cited by the supreme court, was this: The testator gave to his son and the heirs of his body, all his real and personal estate, to his and their own use; and in case his son should die leaving no heirs of his body living, he gave all

and so much of his estate as his son should be actually possessed of at the time of his death, to the Goldsmiths' company, for certain charitable uses; and he directed them, not to give his son any trouble during his life concerning his estate. The son suffered a recovery of the real estate, and it was held by Lord Chancellor King, Sir J. Jekyell, Master of the Roll, and Reynolds, Chief Baron, that as to the *personal* property, "the limitation over was void, as the *absolute ownership* was given to F. Hall the son; for it is to him and the heirs of his body, and the company are to have no more than he shall have left unspent, and therefore he had a power to dispose of the whole, which power was not expressly given him, but it resulted from his interest."

The case of *Flanders* v. *Clark* (1 *Vesey, Sen.*, 9) was this: M. Flanders by a clause in her will, gave £150 to her son, the principal to be paid by her executors at such time and proportion as they please; but that he should not dispose of it to any present or future wife; but if he died without issue, then it should revert to the testatrix's family, and interest at the rate of 5 per cent to be paid by the executors for what should be in their hands till the whole be paid. The surviving executor directed it to be paid after a certain time to the son with interest: which time had expired. It was insisted that the son should have no more than an estate for life in it, and not vested immediately, but the payment suspended till his dying without issue at his death; which as it was personal estate, must be the construction of the words. And that the contingency was good, on which it was to revert to the testatrix's family.

Lord Chancellor Hardwicke said the penning of that was particular, so that it could not be determined on any general rule, but on particular circumstances. If the claim had rested on the first part, he would have thought it should go to him as an usufructuary interest during life only, and then over, but the construction must also be on the other part of the clause, directing the executor to pay interest

till the whole was paid, which showed that the testatrix received it for his personal benefit: but she had a view that he might die, before he made use of it, and therefore he should not dispose of it from her family. He also observed that in the case of the *Attorney General* v. *Hall* the testator gave to his son his personal estate, and if he died without issue, then so much as shall remain, to the Goldsmiths' company: the son died with issue, and it was insisted that he had only an usufructuary interest, and so to go over; but it was determined by Lord King, that he had the absolute property, and therefore the devise was void: for he had power to spend the whole, which was an absolute gift. That the present case was stronger, for he was then living and therefore had the whole property agreeable to the intent of the testatrix, and accordingly the legacy was decreed to the son, without any security.

The case of *Ide* v. *Ide* (5 *Mass. Rep.* 500) was a devise to the testator's son P. and his heirs and assigns forever, of certain lands, and also a gift of personal estate, with this clause: "and further it is my will, that if my son P. shall die and leave no lawful heirs, what estate he shall leave, to be equally divided between my son I. and my grandson N., to them and their heirs forever." It was held that the devise over to I. and N. was void, as inconsistent with the *absolute* interest of the first devisee. Ch. Justice Parsons, in delivering the judgment of the court, said that the limitation over is not of the estate devised to P. but of *what estate devised to him he shall leave.* From this expression it seems very clear that the testator, after having devised an express fee simple to P., intended also that he should have an unqualified power to dispose of it at his pleasure; and if he should dispose of the whole, there would be nothing left subject to the executory limitation. And therefore, whenever it is the clear intention of the testator that the devisee shall have an absolute property in the estate devised, a limitation over must be void, because it is inconsistent with the absolute property supposed in the first

devisee. And a right in the first devisee to dispose of the estate devised at his pleasure, and not a mere power of specifying who may take, amounts to an unqualified gift.

In that case it was held that there was *first*, an express fee simple devised to P. in consequence of which, if not afterwards qualified, he might dispose of the lands at his pleasure; that the limitation over was only of what estate he should leave at his death; which was descriptive only of the estate of which he should then be in possession: that the implication was therefore necessary, that the testator intended, that P. might dispose of any, or all of the estate devised, and leave nothing at his death: that the absolute unqualified interest in the estate devised was therefore given to P. which was inconsistent with the limitation over to I. and N. and was consequently void. And to the same effect are the other cases to which the supreme court referred. All clearly support the principle which the supreme court held applicable in this case; namely, that when real or personal estate is conveyed to a trustee and the settler reserves to, or confers on the *cestui que trust*, by the declaration of trust, the absolute power of disposal of the property for his own benefit, the absolute and unqualified interest in the estate vests in the *cestui que trust*, and any limitation over of the property to another was inconsistent with the gift and therefore void. Many other cases might be cited sustaining the same principle. *McDonald* v. *Walgrove*, 1 *Sand. Ch.* 275; *Bland* v. *Bland, Prec. in Ch.* 201; *Beachcroft* v. *Broome*, 4 *Tenn.* 441; *Wynne* v. *Hawkins*, 1 *Brown Ch. C.* 179; *Sprange* v. *Barnard*, 2 *Brown Ch. C.* 585; *Bull* v. *Kingston*, 1 *Mer.* 314; *Ross* v. *Ross*, 1 *Jac. and Walker*, 153, are a part of them.

I differ with the supreme court in respect to the construction of the power conferred on Mrs. Miller by her declaration of trust. That court as I have already noticed, held that it conferred a power of disposal of the whole property in trust. I think it was limited to so much of the proceeds and income of the property as would be sufficient to pro-

SEL. IV.—6.

vide for her a reasonable support and maintenance during her life.

The power of Mrs. Miller to dispose of the property in trust, conferred, is very much like the power of the wife in the case of *Upwell* v. *Halsey* (1 *Peere Williams*, 651), that I. M. being possessed of personal estate of the value of £333, and having a wife and sister, but no issue, by will gave £10 to his sister, and directs that such part of his estate as his wife should leave of her subsistence should return to his sister and the heirs of her body, and appointed his wife executrix. On the testator's death the wife married the defendant, and afterwards died, upon which the sister sued the defendant, the second husband, for an account of this personal estate. One objection was, that the widow had a power to dispose of the whole, and her marriage with the defendant was a gift in law, and an execution of that power. But the court said, this will is indeed ignorantly drawn, but if the court can pick out the meaning of it, that ought to take place. That as to what had been insisted on, that the wife had power over the capital or principal sum, that is true, provided it had been necessary for her subsistence, not otherwise; so that her marriage was not a gift in law of this trust money. Let the master see how much of this personal estate has been applied for the wife's subsistence, and for the residue of that which came to the hands of the defendant, let him account.

That decree was founded on the admission, that in a case in which the first taker had the power to expend an uncertain part of the thing given, a remainder might be limited over. The uncertainty of the sum which might remain formed no objection.

In the case of *Smith* v. *Bell* (6 *Peters*, 68), the will of B. G. contained the following clause: "Also I give to my wife Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and personal expenses, which personal estate I give and bequeath unto my said

wife, Elizabeth Goodwin, to and for her own use and disposal absolutely; the remainder after her decease to be for the use of the said Jesse Goodwin," the son of the testator. It was held that he took a vested remainder in the personal estate, which came into possession after the death of Elizabeth Goodwin; upon the ground that·it was the clear intention of the testator. It was conceded that words could not have been employed, which would be better fitted to give the whole personal estate absolutely to the wife; or which would more clearly express that intention. But that the words employed to give the remainder of the estate to the son, after the death of the wife, expressed that intention with as much clearness as the preceding words did to give the whole estate to the wife. That the limitation in remainder showed, that in the opinion of the testator, the previous words had given only an estate for life: and upon the ground that such was the intent of the testator the decree was made, sustaining the limitation over of the remainder to the son.

My conclusion therefore is, that the complainants have a valid interest in the trust fund, and therefore a right to institute this suit to protect it. Their interest is vested and existing, although the time of its enjoyment will not arrive until the death of Mrs. Miller. The trustee was required to invest and accumulate all the proceeds of the sales and leases of the land with the income thereof not required for the settler's support and maintenance and expenses of executing the trust, and after her death to apply the residue of the estate for the support of her children. The interest of the complainants in the preservation and proper management of the trust fund is obvious. And Miller having wrongfully obtained the possession and control of the fund and sold and otherwise appropriated it, the complainants having the reversionary interest in the trust, may properly apply to a court of chancery to have it restored and reinvested in trust for their benefit; and that the decree made by the supreme court is therefore erro-

Wright *against* Miller.

neous and should be reversed, and that of the assistant Vice Chancellor should be affirmed, with costs in the supreme court.

GARDINER, J., read a written opinion in which he arrived at the same conclusion with Judge Jewett.

JOHNSON, MASON and WILLARD, JJ., concurred with Judges Gardiner and Jewett, in favor of the reversal of the decree of the supreme court and the affirmance of the decree made by the Vice Chancellor.

MORSE and TAGGART, JJ., dissented and were in favor of an affirmance of the decree of the supreme court.

RUGGLES, CH. J., gave no opinion.

Decree of the supreme court reversed, and that of the Vice Chancellor affirmed.