(20 App. Div. 60.)

### FELTS v. MARTIN.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. ESTATES OF DECEDENTS—MORTGAGE FORECLOSURE — LIEN OF CREDITORS ON SURPLUS.

On foreclosure of a mortgage on a decedent's lands, the surplus is to be treated as real estate, subject to the liens of creditors for the payment of debts after the personal assets are exhausted.

2. SAME—DISTRIBUTION OF SURPLUS—RIGHTS OF CREDITORS.

An order of the supreme court in a proceeding instituted by a widow, directing the surplus arising on foreclosure of a mortgage on decedent's land, and deposited in the surrogate's court, pursuant to Code Civ. Proc. § 2798, to be distributed to the widow, is ineffectual as to a creditor of the estate who had no notice of the proceeding; and such creditor may, by a suit in equity, compel the restoration of the fund to the surrogate court, to the end that he may enforce his lien thereon.

3. SAME—ESTOPPEL.

The creditor, not having been a party to the foreclosure action, nor to the proceedings for distribution of the surplus, is not estopped to maintain such suit by the fact that he was the purchaser at the foreclosure sale.

4. SAME—JURISDICTION OF COURT.

The supreme court, having made the order of distribution, has jurisdiction of the suit to compel a restoration of the fund.

Appeal from special term, Monroe county.

Suit by Mary A. Felts against Annie Martin, individually, and as guardian of Harriet B. Martin, a minor, to compel restoration of a fund withdrawn from the custody of the surrogate's court. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George P. Decker, for appellant.

Charles Van Voorhis, for respondent.

HARDIN, P. J. On the 10th of March, 1895, Joseph Martin died, intestate, in the town of Hamlin, and in the same month proceedings were duly had in the surrogate's court of that county, which resulted in letters of administration upon his estate being issued to Annie Martin, as administratrix, who qualified and entered upon the discharge of her duties as such. The intestate was seised of a parcel of land situated in said town, which is described in the complaint, and which was subject to a lien of a mortgage given to secure the sum of $2,500 by the said Joseph Martin to the Rochester Savings Bank, executed on the 10th of May, 1893. After a default in the payment of the mortgage, an action was brought to foreclose the same in January, 1896, against the administratrix and Harriet B. Martin, who was the only heir of the intestate; and the proceedings resulted in a decree made on the 3d day of February, 1896, directing a sale of the mortgaged premises, which were, by the referee appointed in the decree, sold on the 14th day of April, 1896, and they were bid off by this plaintiff for $3,350; and, after payment of the mortgage and the costs and expenses of the foreclosure, there remained a surplus in the sum of $544.41, and, according to the directions of the decree, the referee, on the 27th of April, 1896, paid the same to the treasurer of the

county of Monroe. Joseph Martin was indebted at the time of his death "in an amount largely· in excess of the amount of his estate, and that his debts, unsecured by mortgage, exceed the sum of $5,000, and that the total assets, as shown by the account heretofore made and filed with the surrogate of Monroe county" by the defendant, as administratrix, amounted to the sum of $1,582.71; and it was averred in the complaint that the amount of the assets of said estate, which will be applicable for distribution among the creditors of said estate, "will be insufficient to pay in full the debts owing by the said decedent."

It is alleged that the plaintiff is a creditor of said estate, and holds demands against the same in an amount of about $4,000, on which demands no payments whatever have been made by the administratrix; and it is averred that the plaintiff has no security for payment "outside of the assets and property of the said decedent." It is further alleged in the complaint, viz.:

"That, immediately after the deposit of said surplus with the said county treasurer, this defendant, well knowing of the insolvency of the said estate, and without the knowledge of this plaintiff, contrived to get said surplus moneys into her own hands, and caused notice of claim thereto to be filed in the clerk's office of Monroe county, in behalf of herself and said infant, and, by proceedings duly had in the surrogate's court of Monroe county, letters of temporary guardianship of the person and property of said Harriet B. Martin, an infant of about the age of two years, were issued to this defendant out of said surrogate's court, on May 19, 1896, limited until the said infant arrived at the age of fourteen years; and the said defendant qualified and has since acted as such guardian. That on May 5, 1896, this defendant, on application to this court, procured an order of reference to H. C. Mitchell, to report to the court the liens against such surplus fund, without any notice to other interested parties, after which a report was made to this court on the 9th day of May, 1896, reporting that this defendant, as the widow of decedent, was entitled to the sum of $117.96 thereof, and the said infant to the sum of $426.48 thereof; and thereafter, and on May 19, 1896, this defendant, on application of this court, procured an order confirming the said report, and directing the said county treasurer to pay out of said fund, for herself and in her own right, the said sum of $117.96, and to herself, as general guardian of the said infant, the sum of $426.48; and thereupon she applied to the said county treasurer, and obtained from him payment of the said sums, which she has since held."

The plaintiff further alleges that, as a creditor of said insolvent estate—

"She claims and has a lien upon the said surplus moneys for the payment of such part of her claims against said estate as shall remain after the application thereon, through the surrogate's court, of the said assets in the hands of said administratrix, and that the right and security of this plaintiff for the enforcement of her said rights against said fund is greatly impaired and imperiled by reason of said withdrawal thereof from the hands of said county treasurer by this defendant, which said withdrawal was accomplished without any notice to this plaintiff, and without her consent, and against her will."

It is further alleged in the complaint:

"That the withdrawal of said funds from the said county treasurer by this defendant was unlawful, and that the said proceedings in this court, instituted and taken by this defendant for the purpose of getting said moneys into her own hands, were without jurisdiction on the part of this court, and were and are void."

It is further alleged that, prior to the commencement of this action, the plaintiff demanded of the defendant "that she return to and de-

posit with the said county treasurer the said surplus moneys so obtained by her, but which the defendant has refused and neglected to do." The plaintiff, in her complaint, asks for a decree directing the defendant to return to the county treasurer of Monroe county the said surplus moneys so withdrawn, there to remain until disposed of according to law.

The answers of the defendants admitted nearly all of the material allegations of the complaint, and alleged that claims were filed by the defendants, and proceedings instituted for the disposition of the surplus moneys, and that an order of reference was made "to report to the court the liens against the said fund, and that subsequently a report was duly made by the said H. C. Mitchell, to which report and all the proceedings had in such surplus proceeding these defendants refer." They also allege that an order was granted confirming the report, and the moneys were paid over,—$117.96 to the defendant as widow, and $426.48 to her as general guardian of Harriet B. Martin. The answers also contain some denials of some of the allegations of the complaint.

Inasmuch as it was held that the complaint did not state facts sufficient to constitute a cause of action, the allegations of the complaint must be regarded as admitted, for the purpose of considering the question of whether the decision was correct. In considering whether the complaint states facts sufficient to constitute a cause of action, it must be "deemed to allege what can be implied from the allegations therein, by reasonable and fair intendment, and facts impliedly averred are traversable in the same manner as though directly averred." Marie v. Garrison, 83 N. Y. 14; same case approved and followed in Sanders v. Soutter, 126 N. Y. 196, 27 N. E. 263. After the sale of the decedent's real estate, upon the mortgage, the surplus money remaining is to be treated as real estate, and is subject to the lien of the creditors of the decedent, and liable to have such debts of the decedent enforced therefrom as remain after exhausting the personal assets of the decedent. From the allegations of the complaint it is apparent that the personal assets are insufficient to pay the debts, and that the plaintiff is a creditor, and therefore has a lien upon the surplus money, in common with other creditors, and is entitled to follow the surplus money and enforce the lien through appropriate proceedings to be instituted for that purpose.

In Platt v. Platt, 105 N. Y. 489, 12 N. E. 25, it was held that, during three years after the death, "the real estate left  *  *  * cannot be so aliened by heirs or devisees as to defeat the claims of creditors thereon. 2 Rev. St. p. 100; Code Civ. Proc. § 2749."

In Rosseau v. Bleau, 131 N. Y. 182, 30 N. E. 52, that case was cited with approval, and the doctrine thereof reasserted, in the following language:

"The rights of creditors against the real estate of deceased persons attach to the land as a statutory lien immediately upon the death of the owner, and, of course, their rights cannot be impaired by any conveyance which is delivered or takes effect subsequently."

The debts of the decedent that remained after the application of the personal assets are in "the nature of charges upon the real estate of the intestate debtor, and attached in the same manner to the surplus when it was realized in the action prosecuted for the foreclosure of the mortgage. This resulted from the statutory enactments existing upon this subject, providing for the application of the real estate for the payment of the debts of the intestate when the personalty has been found to be insufficient for that purpose. It is only the residue remaining after the payment of the debts which can be divided between the heirs or devisees of the deceasd debtor." Bank v. Sharer, 25 Hun, 411. In that case it was said that the provisions of the statute creating the liens controlled, and that an opportunity should have been afforded to all the creditors "to present and substantiate their claims; and, ordinarily, the course prescribed by the statute for executors and administrators is the only one which can be either safely or properly adopted." In that case one of the creditors had not appeared in the action, and no notice was given to him as to the distribution of the surplus money; and in the opinion it was said:

"This violated a fundamental right, in the enjoyment of which he was entitled to be protected. He had done nothing whatever for which he could be lawfully deprived of this right, and, as he had received no information of the proceeding, he could not properly be charged with neglect because he had omitted to present his claim at an earlier period of time than he did. The fact that the other creditors have received the money which was probably payable to him cannot change the legal aspect of the case. That a wrong has been done to him through their agency or participation is no reason whatever why it should be rendered still further effectual by denying him all opportunity for redress."

The duty of a party conducting proceedings as to surplus money to give notice to all persons who have liens by record or otherwise is recognized in Kingsland v. Chetwood, 39 Hun, 610. It was there said, in referring to rule 64:

"And that this was not intended to be restricted to liens appearing by the records is evident from the further requirement contained in the rule that the party 'moving for the reference shall show by affidavit what unsatisfied liens appear by such official searches, and whether any and what other unsatisfied liens were known to him to exist.'"

In this case the facts stated in the complaint clearly evince that the defendant knew of the death, knew of the debts, and therefore knew of the existence of the statutory lien in favor of the creditors of the deceased at the time the proceedings were instituted by her to reach the surplus money.

Section 2798 of the Code of Civil Procedure provides, viz.:

"Where real property, or an interest in real property, liable to be disposed of as prescribed in this title, is sold, in an action or a special proceeding, specified in the last section, to satisfy a mortgage or other lien thereupon, which accrued during the decedent's lifetime, and letters testamentary or letters of administration upon the decedent's estate were, within four years before the sale, issued from a surrogate's court of the state, having jurisdiction to grant them, the surplus money must be paid into the surrogate's court from which the letters issued, pursuant to the provisions of section 2537 of this Code, and the receipt of the county treasurer shall be a sufficient discharge."

The title to which the section refers relates to disposition of decedent's real property for the payment of debts and funeral expenses. The adult defendant was appointed administratrix within the time mentioned in the section. The surplus money arising upon the sale was therefore properly payable into the surrogate's court. Section 2537 of the Code of Civil Procedure provides that, where the statute requires the payment of money into the surrogate's court, "the same must be paid to or deposited with the county treasurer of the county, to the credit of the fund, or of the estate, or of the special proceeding." The validity of the legislation providing for the deposit of the surplus money arising in foreclosure actions, with the surrogate's court, was approved in Re Stilwell's Estate, 139 N. Y. 337, 34 N. E. 777, and in the opinion in that case it was said:

"The Code deals only with a fund arising from the execution of the foreclosure judgment, not disposed of by the decree, and commits that fund to the custody and control of a court which, at the time the constitution was adopted, had extensive jurisdiction over the estates of deceased persons; and this jurisdiction was recognized by that instrument in various provisions for its future organization and existence."

In that case the validity of sections 2798 and 2799 of the Code of Civil Procedure was asserted.

The object of the legislation seems to have been to guard the surplus money arising under foreclosure actions like the one referred to in the complaint in this action, and to place the fund, so arising, where the same may be subject to the action of the surrogate's court having jurisdiction of the estate of the decedent. The withdrawal of the money from the surrogate's court, or from the custody of the county treasurer, interfered with the right of the plaintiff to enforce the statutory lien given to her, as a creditor of the deceased; and as that withdrawal was accomplished without any notice to the plaintiff, and without any consent on her part, and against her will, and insisted upon against a demand made by her to restore it to the treasurer, it seems that she had a right to have the same returned to the surrogate's court, to the end that her statutory lien might be enforced and satisfied according to the provisions of law in such case made and provided. The plaintiff's complaint expressly averred that she had and has "a lien upon the said surplus moneys for the payment of such part of her claims against said estate as shall remain after the application thereon, through the surrogate's court, of the said assets in the hand of said administratrix." The plaintiff was not a party to the foreclosure action, nor was she made a party by notice or otherwise of the proceedings instituted in respect to the surplus moneys arising after the foreclosure of the mortgage. Upon the facts and circumstances detailed in the complaint, it is difficult to conclude that the defendant acted in good faith in causing the money to be withdrawn from the surrogate's court without notice to the creditors having a statutory lien upon the same. Again, so far as the proceedings attempt to deal with her dower, there was no notice to the parties beneficially interested in the fund, or having a lien thereon; and it is not unreasonable to suppose that

the order made by the supreme court in relation to the withdrawal of the fund was through inadvertence, mistake, or by reason of some fraudulent practice with which the defendant is chargeable. It seems that the tribunal that was thus induced, irregularly and without jurisdiction over the parties having a lien upon the fund or interested therein, to divert the money, was the proper tribunal to order a restoration thereof; and it is no defense to such a proceeding to assert that the surrogate's court might have allowed proceedings to be instituted for the return of the money. It is within the equitable jurisdiction of the court to declare void an order or decree obtained by overreaching the court, or by a fraud practiced thereupon, or to restore a fund taken from the court without notice to the parties having statutory liens or otherwise thereon. Wright v. Miller, 8 N. Y. 9; Hackley v. Draper, 60 N. Y. 88; Whittlesey v. Delany, 73 N. Y. 571; Leet v. Leet, 12 App. Div. 11, 42 N. Y. Supp. 174.

From the facts disclosed in the complaint it does not appear that the plaintiff has committed any wrong or omitted anything which she should have performed to avoid the situation under which she now complains. It is without her fault that the fund has been withdrawn and her lien imperiled; and it is but just and equitable that the fund should be restored, to the end that her lien may be administered, after due notice, in proceedings instituted for the distribution of it among the creditors of the decedent justly entitled thereto. If it be assumed that the surplus money is a trust fund for the payment of the creditors of the decedent who have a statutory lien thereon, then it may be said the defendant has, by the withdrawal thereof, become ex maleficio a trustee, and that the creditors of the decedent having a lien thereon are entitled to compel her to restore the money to the surrogate's court, to the end that the same may be administered according to the provisions of law. As the testator died on the 10th of March, 1895, and letters of administration were issued in that month, the three years mentioned in section 2750 of the Code of Civil Procedure, in which any creditor of decedent may present a petition for a decree directing the disposition of the decedent's real property, or interest in real property, had not expired, and have not yet expired; and therefore the creditor mentioned in the complaint may yet pursue the remedy by petition mentioned in that section, if the surplus money shall be returned to the surrogate's court, or to the hands of the county treasurer, as its officer.

It is asserted by the learned counsel for the respondent that the plaintiff was a purchaser at the foreclosure sale, and furnished the money which paid the mortgage, and also created the surplus, and which was deposited by the officer making the sale with the county treasurer, and it is therefore contended that the plaintiff is estopped. It was alleged, however, in the complaint, that the "withdrawal was accomplished without any notice to this plaintiff, and without her consent, and against her will." Under those circumstances, inasmuch as the plaintiff was not a party to the proceedings relating to the surplus money, we think she was not bound by them.

Not having been a party to the action, nor to the proceedings, she ought not to be bound by them. The surplus is to be regarded as realty belonging to the intestate.

In Fliess v. Buckley, 22 Hun, 554, it was said:

"There is no difference in principle between such surplus and a parcel of the realty remaining unsold after a sale of enough to satisfy the judgment of foreclosure."

And in Dunning v. Bank, 61 N. Y. 506, it was said, viz.:

"The terms of the statute show that the surplus is regarded as real estate. The most careful precautions are taken to prevent the heirs from being deprived of it, except in the same manner and to the same extent that would be permitted in case the land had remained unsold."

In Fliess v. Buckley, 90 N. Y. 291, it appeared that William M. Fliess was a party to the foreclosure action, and it was therefore said:

"His remedy, therefore, was to enforce his claim in the court by whose directions the foreclosure had taken place. He requires no other action, nor has he any interest in the relief sought by the other plaintiffs."

We see nothing in that case which aids the contention of the respondent.

In Breevoort v. McJimsey, 1 Edw. Ch. 554, it was said that, after a sale fairly made in a mortgage foreclosure, the surplus is to be regarded as "a substitute for the sale which the administrator might have procured"; and it was further said that the equitable rights of the creditors to the surplus attached at once to such proceeds of the sale as remain after satisfying the mortgage debt, and stand "instead of the land," and the money is to be applied in the same equitable manner as it would be were lands sold by direction of the surrogate.

Doubtless the widow is entitled to dower in the surplus, as she was in the land before the sale. Matthews v. Duryee, 45 Barb. 69; Elmendorf v. Lockwood, 4 Lans. 396. It is not necessary, however, on this appeal, to determine the extent of her dower in the surplus. Suffice it to say that, before it is actually admeasured, the parties who are interested in the surplus fund are entitled to be heard. Inasmuch as the plaintiff was not a party to the foreclosure action, nor was she a party to the proceedings instituted by the defendant in respect to the surplus money, she occupies the position of a stranger to the record, and may insist that the order made in the surplus proceedings, which were without notice to her, be held inefficient as to her. Freem. Judgm. (3d Ed.) § 337; Vose v. Morton, 4 Cush. 27. It may be that, when the facts mentioned in the complaint are fully developed at the trial, they will indicate more clearly than is expressly alleged that the conduct of the defendant has been fraudulent, and therefore that she should not be, in any sense, protected by the proceedings alleged to have taken place in respect to the surplus money rightly belonging to the custody of the county treasurer. The foregoing views lead to the conclusion that the decision at the special term was erroneous.

Judgment reversed, and a new trial ordered, with costs to abide the event. All concur, except FOLLETT, J., not voting.