BREEVORT *vs.* M'JIMSEY and others.

An administrator' who is applying to a surrogate for leave to sell real estate in order to pay debts, will be restrained by perpetual injunction, where a decree for foreclosure and sale of the same premises has been had in this court and is in force.

A bond and mortgage had been given to the complainant by one Alexander C. Jackson and the defendant Robert M'Jimsey; and a bill for foreclosure was filed. · Alexander C. Jackson had died prior to the commencement of the suit ; and at that time, no letters of administration of his estate had been granted to any person.

*January 9, 1833.*

*Injunction.*
*Surrogate's court.*

On a former occasion, it was decided in this suit, that the court could order the whole of the mortgaged premises to be sold, notwithstanding infants were interested : *See p. 447, ante.*

A sale of the whole took place on the second day of November one thousand eight hundred and thirty-two ; and deeds, executed by the master, were ready to be delivered to the purchasers.

Prior to the sale, but after the decree for the same, Mr. Silvanus Miller, the public administrator, had been appointed by the surrogate of the city and county of New York administrator of the estate and effects of Alexander C. Jackson, deceased ; and Mr. Miller, in the month of September obtained an order from the said surrogate requiring all persons interested in the estate of the said deceased to appear before him on the twenty-fourth day of December to show cause why authority should not be given to the petitioner to mortgage, lease or sell so much of the real estate of the said Jackson as should be necessary to pay his outstanding debts. This order embraced the mortgaged premises.

The complainant, thereupon, obtained an injunction from this court, enjoining Mr. Miller from any further prosecution of the said application.

Mr. Miller was now prepared with a petition, addressed to the court of chancery, which prayed, either that the injunction might be dissolved or that the surplus of the proceeds of the above sale, after the payments decreed (as before stated), should be distributed between the defendants Robert M'Jimsey and Ann P. Jackson, the widow of Alexander C. Jackson and the petitioner, according to such directions as might be given by the court in the premises.

The complainant also presented a petition, setting forth the facts before detailed ; and, that several of the purchasers at the master's sale had expressed an unwillingness to complete their purchases under the circumstances, and his apprehension that most, if not all, of the purchasers would decline to complete their purchases, except under the direction of the court of chancery. The complainant by his petition, also showed, that he was ignorant, until after the sale, of any person's having been appointed administrator of the estate of the said Alexander C. Jackson. He prayed, that the purchasers be ordered to complete their purchases, if, in the judgment of this court, a perfect title could be given ; and also, that if it could not, then the master be directed to refund and the decretal orders in the suit be vacated and the complainant be authorized to file a supplemental bill for the purpose of making Silvanus Miller a party : or such other relief as to the court might seem meet.

Mr. *D. S. Jones,* for the petitioner.

Mr. *W. Mitchell,* for Mr. Silvanus Miller.

Mr. *O. Bushnell,* for the infant defendants and a purchaser.

Mr. *Jesse Hoyt,* Mr. *D. Lord,* and Mr. *W. C. Wetmore,* for different purchasers.

THE VICE-CHANCELLOR. It was decided on a former oc-

casion in this cause, that the court could order a sale of the whole of the mortgaged premises, even though there might be more than enough to satisfy the complainant's debt and costs and notwithstanding portions of it could be sold without prejudice to the value of the residue.

Under the decree, consequent upon that decision, the lands have been sold; and an application is now made, to compel the purchasers to accept the deeds and pay the purchase money. The only objection to the completion of the master's sale arises from the proceeding of Silvanus Miller, Esquire, the administrator of Alexander C. Jackson, deceased.

The law, as to the authority of executors or administrators over the real estate of their testator or intestate, is very plain. As such, they have no title or interest whatever in the real estate. By virtue of their office, they may, at any time within three years after letters testamentary or administration granted and by showing a deficiency of personalty to pay debts, apply for and obtain an order from the surrogate authorizing them to exercise acts of ownership over the real estate for the purpose of raising money to pay the debts. This is in the nature of a power vested in them by statute and is to be exercised in behalf of creditors only.

It cannot be made use of for any other purpose. Under our present system, it is a substitute for the remedy of creditors against heirs and devisees—who, for the period of three years, are not liable to be sued for the debts of the ancestor, and even after such period they can only be sued in a court of equity : 2 R. S. 100 ; Ib. 452, 454, 456. And it is to be observed, that whenever an executor or administrator makes a sale by virtue of such power, the proceeds are not left in his hands to be applied or distributed in the course of administration, but are paid to the surrogate; in whose hands the money is regarded in the same light as this court would look upon it, namely, as equitable assets for the payment of debts : since it is to be applied towards the payment, if not sufficient to discharge the whole of them and " without giving any preferences " to bonds or other specialties or to any demands on account

" of any suit being brought thereon:" 2 *R. S.* 106. The sur-
plus, if any, is declared to belong to the heir or devisee ; and
does not go into the hands of the executor or administrator for
distribution as personal estate.

From this view of the law, and which is doubtless a correct
one, it is certain there could be no object in proceeding to a
sale under the surrogate's order beyond what is already at-
tained by the decree of this court. The property is sold to
as good an advantage ; and the probability is, to a better ad-
vantage as to price : since there is as much confidence in a
mortgage sale under the decree of this court as in a sale by
an administrator. In the one case, all persons having liens
are made parties and a purchaser gets a title free from all
these incumbrances ; while in the other, the property is sold
" subject to all charges by judgment, mortgage or otherwise."
Again, in regard to the proceeds of sale under a decree of
foreclosure, the surplus, after satisfying the mortgage debt and
costs, is brought into court and is subject to its control and
disposition in favor of other creditors. Equity can ascertain
who have claims upon as well as who shall receive such sur-
plus monies, and can also pay it over. If the administrator of
the deceased mortgagor has a right to receive any part of the
proceeds, he may apply, and as the court has possession of the
fund, it can award such part to him. If he has not the right
to receive it in behalf of the creditors at large, then the latter
may apply, upon the equity of the statute which gives them a
remedy against the heirs in this court and here only. Although
that remedy cannot be pursued until after a certain period
which has not arrived in the present case, yet, as the lands have
here been sold for other purposes and the proceeds are with-
in the power of this court, and as such sale may fairly be con-
sidered, in respect to the surplus, a substitute for the sale which
the administrator might have procured, I see no difficulty in
permitting the equitable rights of the creditors to attach at once
to such proceeds, instead of the land, and the money to be ap-
plied in the same equitable manner under the direction of this
court as would be applied by the surrogate, provided the lands
were sold under his authority.

1833.

BREEVORT
v.
M'JIMSEY.

The court of chancery possesses all the requisite powers of calling creditors before it, preserving the fund for their use and applying it to the discharge of their debts in the most equitable way. No good reason can be assigned, therefore, why this court should have forborne to decree a sale for the purpose of converting the whole of the mortgaged premises into money. If we look at the expediency of a sale, every thing concurs to show it was proper and necessary ; and so far as creditors are concerned, the object and end of a proceeding before a surrogate is attained equally as well through the aid of this court.

Could, then, the appointment of an administrator and the commencement of his proceedings before the surrogate, after the filing of the bill in this cause, intercept the authority of this court or prevent its making the decree it has done ?

· There was a *lis pendens*, with notice, when Mr. Miller took out letters of adminstration and commenced proceedings before the surrogate. The whole of the mortgaged premises, embraced also in his proceedings, formed the subject matter of this suit ; and this subject matter was fairly within the jurisdiction of this court. As chancery had taken cognizance of the case, no subsequent conduct of Mr. Miller's nor the act of any other tribunal could take from it the power to proceed. At the utmost, the authority of the surrogate to order a sale by the administrator, under the circumstances of the case, was but concurrent ; and the one which is first exercised must certainly be effectual, although it may have been, in some respects, for a different purpose.

In *Beckford* v. *Kemble,* 1 *S. & S.* 7, the court of chancery granted an injunction to restrain a mortgagee of a West India estate from proceeding on a bill of foreclosure in the Colonial court, filed after a decree for an account upon a bill by the mortgagor to redeem in the court of chancery. And, in *Bushby* v. *Munday,* 5, *Mad.* 297, an injunction was granted to restrain proceedings in the court of sessions in Scotland brought to enforce the payment of a bond : a bill having been filed in the court of chancery for the purpose of having the bond delivered up and cancelled.

1833.

BREEVORT
v.
M'JIMSEY.

Upon a like principle, it is competent for this court to restrain the administrator from proceeding to a sale of the lands already sold by a decree of this court and which is made between parties in whom the immediate legal and equitable title were vested: taking care, of course, to preserve to the administrator (or the creditors in whose behalf his proceedings were undertaken) all rights and equities in the surplus.

Having no doubt upon the subject and believing no embarrassment can arise to the title of the purchasers by reason of the steps taken by the administrator before the surrogate, or because he was not a party to the suit when the decree in this cause was made, I shall direct that the purchasers complete their respective purchases, by paying the balance of the purchase monies and accepting deeds from the master; and Mr. Miller is perpetually enjoined from any further proceedings before the surrogate in relation to these lands—leaving him however and all persons who may be supposed to have any claims or interests in the surplus monies, to take such steps in relation to the same as they may be advised, and without prejudice to their rights therein.