### JAMES O. DRAPER *et al. vs.* GEORGE H. BARNES *et als.*

The realty of a decedent was ordered to be sold by a Court of Probate to pay his debts:

*Held,* that until it was sold his heirs were entitled to the possession of the realty and to its profits, except only statutory emblements.

A. died without personalty, leaving an heir, B., who also died without personalty. Both A. and B. left debts, and the administrators of each asked the Probate Court for leave to sell the realty to pay the debts of the respective estates:

*Held,* that B. or his heirs was entitled to the rents and profits of A.'s realty until it was sold by A.'s administrator; that after paying A.'s debts any surplus from such sale, if the whole of A.'s realty was thus sold, went toward the payment of B.'s debts, and after these were paid the resulting surplus, if any, went to B.'s heirs or their grantee.

Pending a petition to the Court of Probate for the sale of a decedent's realty to pay his debts, his heirs alienated the realty:

*Held,* that the purchaser took the realty subject to any decree the Probate Court might make.

BILL IN EQUITY. The facts involved and the prayer of the bill are stated in the opinion of the court, and are given in detail, *ante,* p. 153.

*July* 13, 1878. POTTER, J. This cause was heard on bill, answer, replication, and oral evidence, at the same time as the appeal from the Probate Court of Pawtucket, *Mowry* v. *Robinson, ante,* p. 152, and involves the same facts. The bill, after stating the facts relative to the estates of Spencer B. Mowry, Senior, and Spencer B. Mowry, Junior, goes on to allege that the father and son left real estate, but that the personal estate, in both cases, was insufficient to pay debts, &c. ; that said Barnes appealed from the decision of the commissioners for delay ; that there was no valuable consideration for the conveyances from the heirs to him ; that he has received the rents and profits of the estate ; that the real estate being probably sufficient only to pay the debts of the father, the administrator of the son is entitled to the rents and profits to apply to the debts of the son ; that when sold on the decree for the debts of the father, the administrator of the son is entitled to the surplus, and the bill contains a prayer for a receiver, and for an injunction.

The answer denies the insufficiency of the personal estate, alleges that the reports of the commissioners were erroneous ; that the deeds to Barnes were for a valuable consideration ; that there is real estate enough to pay the claims against both estates ; that Barnes purchased at the request of the widow, and on her representation that there were no claims against the estates, and that

on these grounds she should be estopped by said representations from setting up her claims against his rights in the real estate, and prays that she may be enjoined from prosecuting them, and that he may be held entitled to relief in equity, and to the same relief as if he could have appeared and had appeared before the commissioners and contested her claims.

A portion of the answer is in the nature of a cross-bill under Pub. Laws R. I. cap. 563, § 10, April 20, 1876.

It is contended by Mr. Barnes that the report of the commissioners is in the nature of a judgment, which can bind only the parties to it, and that he was not a party to it.

In most cases in our probate proceedings the notices are given, not personally, but by public advertisement to all parties interested. The law gives the right of appeal only to creditors and persons entitled to distribution. And as the heirs from whom he purchased would be entitled to distribution, he might have appeared in their right, and the court might have sustained an appeal taken by him in the name of his vendors. He, Barnes, did appeal in his own name, and the court dismissed his appeal, because it was taken from the decree of the Court of Probate and not from the judgment of the commissioners.[1]

The decision of the commissioners, not being reversed, was good against the distributees and heirs, and the purchaser from the heirs steps into their place and succeeds to their rights and no more.

The respondent Barnes claims relief on the ground that the widow is estopped by her representations to him from setting up her claims, and that he ought on this ground to be relieved in equity, inasmuch as he could not have made this defence before the commissioners ; their only duty being to decide whether the debt was due, and not whether she was estopped from claiming it. But we are not satisfied with the evidence on which this estoppel is claimed.

Upon the view we have taken of other points, the question of the consideration in the deeds becomes of no importance, as also the question of whether the estate is sufficient or not to pay the debts of both father and son. It will be in the power of the

---

[1] *Barnes* v. *Mowry*, 11 R. I. 420.

purchaser, Mr. Barnes, to attend the sale and prevent a sacrifice of the property.

The administrator of the son claims the rents and profits of the real estate.

It is frequently the case, and especially in small estates, that the administrator takes possession of both real and personal estate and applies the income of the real estate as well as the personal to debts and expenses. This is by consent, and from a desire to economize and pay debts and save what can be saved for the family. In such cases the administrator becomes the agent of the heirs to receive and apply the income at law, or under the ordinary probate jurisdiction. But he has no such right without consent. The heirs are entitled to possession and to the profits until the realty is sold by the administrator to pay debts, excepting only the case of emblements specified in the statute. Gen. Stat. R. I. cap. 174, § 5.

Whether in the administration of estates in a court of chancery the general rule is different, or whether there are any special circumstances in the present case to except it from the ordinary rule of law, is a question which it may be necessary to decide in some subsequent stage of the proceedings, but not now.

We see no necessity at present for granting the prayer for a receiver ; but if the whole estate is sold for the father's debts, the surplus remaining will take the place of the real estate which would have gone to the son, Gen. Stat. R. I. cap. 168, § 14, and would have been liable for his debts.

But the son also has died leaving debts, and the purchaser, Barnes, now represents the heirs of the son.

It is the duty of the court to see that this surplus is applied to the debts of the son, and if there should be any surplus after paying the debts of both father and son, it belongs to the purchaser, and the decree must be drawn accordingly.

*Decree accordingly.*

The case came again before the court for consideration, the complainant contending that the estate should be administered in this court and that the heirs of Spencer B. Mowry, Junior, should be required to account for the rents and profits received by them from his realty while in their possession.

Gen. Stat. R. I. cap. 176, contains the following provision :

" SEC. 10. No person entitled to a share in any deceased person's estate shall have a right to demand the same within three years after administration or letters testamentary granted on such estate, unless he shall give bond to the administrator or executor, with sufficient surety, to be approved by the Court of Probate, to refund the proportionate share of the estate, in case any debt or debts should afterwards appear against the same, and the executor or administrator should not have a sufficiency of the estate in his hands, undivided, for the payment thereof : *Provided*, that the heirs at law or devisees may, during said term, take the rents and profits of the real estate as heretofore."

Gen. Stat. R. I. cap. 178, contains the following provisions :

" SEC. 1. The estate of every deceased person shall be chargeable with the expenses of administering the same, the funeral charges of the deceased, and with the payment of his just debts; and the same shall be paid by the executor or administrator of the estate out of the same, if, and so far as, sufficient therefor.

" SEC. 2. The personal estate shall stand chargeable for such expenses, charges, and debts, in the first instance, and the real estate for all the same which the personal estate shall be insufficient to satisfy, unless the deceased has otherwise directed by his last will and testament.

" SEC. 14. No heir or devisee of any deceased person shall have power, within three years and six months after the probate of the will, or grant of administration on the estate of such person, to incumber or aliene the real estate of the deceased, so as to prevent or affect the sale thereof by the executor or administrator, if necessary, as prescribed by law : *Provided*, that after the expiration of three years and six months, the heir or devisee may aliene or incumber the same, and the same shall not be liable for the debts of the deceased in the hands of the purchaser thereof, or of any other person.

" SEC. 15. The liability of the real estate of deceased persons for the payment of their just debts may be enforced by actions of the case, to be brought against the heirs at law or devisees of such estate : *Provided*, the personal estate of the testator or intestate be insufficient for the payment of his debts, funeral charges, and expenses of supporting his family and settling his estate.

" Sec. 16. Such action shall be brought against all the heirs and devisees who took such estate by devise or descent from the testator or intestate, if to be found in person or estate.

" Sec. 17. The writ in such action shall be served by attaching such real estate in the first instance, by process of summons and attachment, if such estate has not been aliened by such heir or devisee ; and in case of alienation, shall be in form and served as writs in other cases.

" Sec. 18. The execution in such action shall be served upon, and the debt and costs levied and collected out of, the estate received from the testator or intestate by the several heirs or devisees, in the same proportion that they hold the same, if such real estate remain unaliened, and it can be conveniently so done ; and in case it be levied in any other proportion, the parties aggrieved thereby shall be entitled to a joint or several action against any person or persons in arrears, to recover such arrearages, with costs.

" Sec. 20. If the heir or devisee of any such real estate shall aliene any such estate, before the same shall be attached for the debt of the testator or intestate, such heir or devisee shall be liable to pay the value of the estate so aliened, to the creditor of the testator or intestate, to be ascertained by a court or jury, who shall assess the damages in the suit that may be brought against such heir or devisee as aforesaid ; and the execution in such case shall be served upon the heir or devisee who shall have aliened as aforesaid, or shall be levied on his estate, in manner prescribed by law for his own proper debt."

*February* 22, 1879.   POTTER, J.   While it is undoubtedly true that this court in equity has concurrent jurisdiction with the Probate Court in many cases, we do not think the present is a case for the exercise of it.

The heirs at law and their assigns, on the decease of the Mowrys, went into possession of their real estate, and the real estate on sale being insufficient to pay the debts, this bill is filed for the purpose, though not the sole purpose, of requiring the heirs to account for the rents they have received, and to have them applied to the payment of the debts.

Our laws furnish two different modes of reaching the estate of a deceased person in the hands of his heirs ; first, by the ad-

ministrator applying to have it sold to pay debts; second, by actions by creditors against the heirs.

It is very noticeable that while the land of the deceased is made generally chargeable for debts the statute contains an express provision, Gen. Stat. R. I. cap. 176, § 10, that no person shall have a right to demand his share of a deceased's personal estate within three years, unless he gives bond if debts appear, to refund his proportionate share of said estate, "*Provided*, that the heirs at law or devisees may, during said term, take the rents and profits of the real estate as heretofore."

In Gen. Stat. R. I. of A. D. 1872 and Rev. Stat. R. I. of A. D. 1857, this provision is under the head of "Descent, Distribution, &c." In the Digest of A. D. 1822, page 235, where it first appears, and in that of A. D. 1844, page 147, it is under the head of "An act directing the descent of intestate estates and the settlement thereof, &c." The *Proviso* is important because it recognizes the practical construction of the older laws.

So, also, in actions against heirs for debts of the ancestor. By Gen. Stat. R. I. cap. 178, §§ 14, 18, 20, if the heir has not aliened the execution is to be levied on the estate, and if he has aliened before suit he is to be liable "to pay the value of the estate so aliened," § 20 being the very words of the old English statute. There is no provision whatever as to accounting for rents and profits, and nothing from which we can infer any intention of the legislature that they should be accounted for. On the contrary, the inferences are strong the other way.

On any other construction, we can understand that cases of much hardship might arise. The family of the deceased, if in possession, may remain in possession, and may receive no profits otherwise than by use and occupancy; while, on the other hand, the executor may apply for a sale as soon as he can satisfy the Court of Probate that there is a deficiency of personal estate. This rests in the sound discretion of that court.

Formerly in England the Probate (Ecclesiastical) Court had jurisdiction only of the personal property. They could not prove a will of real estate, and had nothing to do with real estate, and it may have, therefore, been more necessary there for a court of equity to aid creditors in obtaining their debts, and it may often be necessary here in cases of fraud, in marshalling assets, in ques-

tions of subrogation, in enforcing contributions, in equitable assets, in discovery, &c.

Here, so far at least as concerns the liability of the land, our courts of probate have complete jurisdiction and very ample powers. See 1 Story Eq. Juris. § 543 *a*, § 628, n.

In England, courts of chancery have ordered land sold to pay debts in many cases where the old law gave only the remedy by *elegit*, *i. e.* to hold until the rents paid the debt. Many cases of this sort are cited in *Burton* v. *Smith*, 13 Pet. 464, 481, which was a case from Virginia, where the law was similar to the English. But in regard to the rents and profits of land in the possession of heirs, the cases are few. Story, in 2 Eq. Juris. § 1216, Perry's ed., lays it down as law that equity will compel an account of them, and cites only *Tyndale* v. *Warre*, Jac. 212, where the subject is not even mentioned, the question being, whether a reversion, which had descended to the heir, should be ordered sold for the debt of the ancestor, and *Curtis* v. *Curtis*, 2 Bro. C. C. 620, where the widow sued for dower, obtained judgment, and the widow and the heir both dying, a bill was filed against the devisee of the heir for one third part of the rents or mesne profits from her husband's death. Sir Richard Pepper Arden, M. R., says, by way of illustration, p. 633: "It is the practice in equity, that bond creditors coming for a distribution of assets shall have an account of rents and profits, which they could not have at law." He refers to no authority in point.[1]

In *Rowe* v. *Beavis*, 1 Dick. 178, we find a decision reported in three lines only, that the rents of real estate descended are to be accounted for and applied before the inheritance is sold and applied. No facts are stated, nor anything whatever, to show the nature of the case. And on this question see, also, *March* v. *Bennett*, 1 Vern. 428; *Waters* v. *Ebrall*, 2 Vern. 606.

How much of this jurisdiction in England depends on statute is difficult to ascertain. By Sir Samuel Romilly's Act, 47 Geo.

---

[1] He does indeed speak of the case of *Dormer* v. *Fortescue*, 3 Atk. 124, in a way which might mislead. In that case the bill was for discovery and account of rents by mesne profits in a case where a person had recovered judgment in ejectment. It of course was an authority for the case he was actually deciding, but has not the remotest connection with the question of the power of a court of equity to make the rents received by heirs from descended land liable for the debts of the ancestor.

III. cap. 74 of A. D. 1807, real estate of deceased bankrupts was made liable for all debts, but preference was given to specialties, and by subsequent statutes, 11 Geo. IV. & 1 Will. IV. cap. 47, &c., larger powers of sale were conferred on the Court of Chancery, and by 3 & 4 Will. IV. cap. 104, all lands, whether of traders or others, are made assets for the payment of debts, but preference is given to specialties, to be administered in equity. As bankruptcy was a part of the jurisdiction of the Court of Chancery, many cases relating to the application of real estate to the payment of debts would appear in the reports of that court.

But in this country, we think, on the construction of similar statutes in other states, the heirs have been held entitled to take the rents until the estate is sold to pay debts. See 3 Redfield on Wills, cap. 8, §§ 32, 19, pp. 238, n., 135, n.; *Kimball* v. *Sumner*, 62 Me. 305; *Titterington* v. *Hooker*, 58 Mo. 593; *Breevort* v. *McJimsey*, 1 Edw. Ch. 551; *Hellman* v. *Stephens*, 16 N. Y. 278.

And having in our State the additional provisions before referred to, we think there can be no doubt as to the meaning of our statute. And it seems that anciently real estate was sometimes included in the inventory of a deceased person, which practice was abolished by act of October, A. D. 1803, the preamble stating that it is passed to remove doubts as to the existing laws. The prayer of the bill for the application of the rents to pay debts must therefore be refused.

The bill also states that the whole of the real estate of the father has been sold by order of the Court of Probate, to pay his debts, it being impossible to sell a part of it without great sacrifice, and prays that if there be a surplus it may be paid over to the administrator of Spencer B. Mowry, Jr., his only son and heir, to be applied to said son's debt.

If there is a surplus it is, of course, upon the settled principles as to conversion, to be treated as if it had gone to the son as real estate, and on descending to him, would, on his death, be liable for his debts in the same manner as if it had remained real estate. *Decree accordingly.*

*Tillinghast & Ely*, for complainants.

*A. & A. D. Payne*, for respondents.

NOTE. — The foregoing decisions are affirmed in *Allen* v. *Allen, infra.*