## HOFFMAN HOUSE v. STOKES.

(Supreme Court, Appellate Division, First Department.   April 2, 1900.)

ASSIGNMENTS—PLEDGES—CONVERSION BY PLEDGOR—TRUSTS.

Defendant assigned a judgment to three assignees, to indemnify them against loss as bondsmen and sureties, and directed that plaintiff corporation, one of such assignees, should collect the judgment, and apply the proceeds to the extinguishment of such liabilities, among which was a bond on which plaintiff was liable as principal with sureties, and the assignment provided that any balance remaining after the extinguishment of all such liabilities should be paid to defendant.   Plaintiff collected the judgment, and after all the liabilities secured by the assignment, except that arising from the bond on which plaintiff was principal, had been extinguished, defendant, as plaintiff's president, withdrew the balance of such fund remaining in its hands, and converted the same to his own use.   *Held*, that plaintiff did not hold the proceeds of the judgment so assigned, as trustee, for the assignees, but merely as their agent to collect the proceeds of the security pledged by the assignment, and hence plaintiff was not entitled to sue as trustee to recover from defendant, for itself individually, an amount equal to its liability on the bond.

McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by the Hoffman House, New York, as trustee, against Edward S. Stokes, to recover a balance of the proceeds of a judgment claimed by plaintiff as trustee for itself and others. From a judgment in favor of defendant on a dismissal of the complaint, plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

David McClure, for appellant.
Charles E. Hughes, for respondent.

BARRETT, J.   The question here is whether the plaintiff, as trustee, has any cause of action against the defendant.   If not, the nonsuit was correct.   The complaint proceeds throughout upon the plaintiff's trust rights and duties, and the learned counsel who opened the case emphasized this position.   Indeed, it is quite evident, from both complaint and reply, that the action was advisedly brought in a representative capacity, and that the plaintiff's pleadings were carefully framed to exclude its individual capacity. Thus, we find that in reply to the defense of a general release, set up in the second subdivision of the ninth paragraph of the answer, the plaintiff pleaded as follows:

"Replying to the allegations of subdivision 2 of paragraph 9 of said amended and supplemental answer, the plaintiff denies, on information and belief, that on or about the 25th day of September, 1897, or at any other time, for a valuable consideration, it was agreed between the plaintiff and the defendant herein that all claims, demands, or causes of action, of any sort whatever, existing in favor of the plaintiff against the defendant, should forthwith be canceled and discharged, if the defendant by said allegations intends to charge that thereby claims, demands, and causes of action of the plaintiff, as trustee, against the defendant, were canceled or discharged; and the plaintiff, being so advised by counsel, alleges that it could not release its claim as trustee

against the defendant in consideration of the discharge by said defendant of any alleged claims he might have against the plaintiff in its individual capacity."

That the intention here was, while practically admitting the general release as a fact, to limit its effect to the plaintiff's individual claims, is made doubly clear by a later averment of the reply. The defendant, in the second subdivision of the tenth paragraph of his answer, pleaded a counterclaim of $40,000, which he asked to have set off against any claim which the plaintiff might establish against him. To this counterclaim the plaintiff replied as follows:

"Further replying to the allegations of said subdivision 2 of paragraph 10 of said amended and supplemental answer, the plaintiff alleges, on information and belief, that on or about the 25th day of September, 1897, the plaintiff asserting claims against the defendant which were matters of dispute, and the defendant asserting claims against the plaintiff which were also disputed, it was agreed between the plaintiff and the defendant herein, for a valuable consideration, that all claims, demands, and causes of action of every sort existing in favor of the plaintiff in its individual capacity and against the defendant, or in favor of the defendant and against the plaintiff, should forthwith be canceled and discharged; that all the conditions of said agreement on the part of the plaintiff herein to be performed were duly performed; and that by reason thereof any claim of the said defendant for or on account of the said sum of $40,000 or thereabouts, set forth in said subdivision 2 of paragraph 10 of said amended and supplemental answer, is released and discharged."

We do not mean to intimate that these releases definitely settled either the claim or the counterclaim. That question is not before us. We simply wish to point out that all questions as to their import and effect were eliminated from the case by the representative attitude which the plaintiff assumed. It thus declined the issue tendered, whether its release embraced the moneys alleged to have been withdrawn by the defendant from its funds and converted to his own use. It also declined the issue tendered, whether it withheld from the defendant and applied to its own use $40,000 received by it to his use.

The question, then, for our consideration is necessarily confined to that stated in the opening sentence of this opinion; and it is only fair to the plaintiff to say that it presents no other question upon this appeal. In its brief it adheres resolutely to its representative attitude, and makes no individual claim.

What, then, is that representative claim? The facts are few and simple. Upon the 18th day of March, 1895, the defendant assigned to three personalities a judgment which he had recovered against one Mackay. The assignment is to (1) Ronald T. McDonald; (2) the Hoffman House (the plaintiff, individually); and (3) James D. Leary. This assignment—so it reads—was "given for the purpose of indemnifying the said above-mentioned assignees against loss or damage by reason of certain obligations entered into by them as bondsmen or sureties for and at the request of Edward S. Stokes," the defendant here. The assignment then particularizes each of these obligations. The first was to secure McDonald and Leary against their liability upon an undertaking on appeal which they had given or guarantied in a case in which the defendant was ap-

pellant. The second was to secure the Hoffman House against a
liability of about $35,000, which it had incurred individually as-
surety upon a bond given in a proceeding in which its predecessor,
"The Hoffman House of New Jersey," was defendant. The third
was to secure Leary for the payment to him of about $25,000, which
he had previously lent to the defendant. The succeeding provisions-
of the assignment read as follows:

"The said judgment and claim is to be collected by, and the money received
thereon to be paid over to, the Hoffman House, and by it to be applied to the
extinguishment of the said several liabilities above recited, and the surplus,
if any, to be turned over to the said Edward S. Stokes, or his assigns or legal
representatives. The said Hoffman House is to apply these moneys for the-
purposes above mentioned, and for the benefit of the said Ronald T. McDonald,
the Hoffman House, and James D. Leary, as their interest may appear at the
time."

It was conceded in the opening that the first and third of these-
obligations had been extinguished. The gravamen of the action,
therefore, was reduced to the plaintiff's right, as trustee, to recover
under the second specification so much of the proceeds of the Mac-
kay judgment, withdrawn from its funds by the defendant, as might
be necessary to secure its individual liability of "about $35,000 origi-
nally." The only additional facts which are at all material to the
decision of the legal question presented are that the amount of the-
Mackay judgment was paid to the Hoffman House; that the de-
fendant, who was its president, out of the proceeds of the Mackay
judgment, paid certain sums to his counsel therein, and also the-
amount due to James D. Leary, as specified in the assignment; and
that he withdrew the balance, and converted it to his own use.
This balance was $61,658.98. The plaintiff's counsel in his opening
made no claim that the plaintiff, as trustee, was entitled to recover
this entire balance. What he claimed was a verdict for so much
of that balance as would cover the individual obligation of the-
Hoffman House. This was his language:

"But we do stand here, gentlemen of the jury, insisting upon it that Mr.
Stokes shall restore the money to the extent of protecting that $35,000 bond
which the Hoffman House of New York is principal upon, and upon which.
Daniel J. Leary and James D. Leary are sureties."

And again:

"We now stand here as the Hoffman House trustee, assuming its proper
position of obligation to perform its duty as trustee, and appearing here for-
the benefit of its cestuis que trustent, who are the Hoffman House corporation
as a hotel corporation, if I may say so, individually,—that is, apart from any
trust interest,—and the two Learys and McDonald."

It thus appears that the plaintiff insisted upon the right to re-
cover in its representative capacity for the benefit of itself indi-
vidually as cestui que trust; and that when it made that claim
there was no other cestuis que trustent, save itself individually,.
left under the assignment. It is true that it claimed that its own
sureties upon the very bond in which it was individually the prin-
cipal were also its cestuis que trustent. That certainly is a for-
midable proposition. These sureties were not mentioned as such in
the assignment. One of them, James D. Leary, was, as we have-

seen, named independently in the third specification, and the other (Daniel J. Leary) was merely a witness to the instrument. The assignment was not, either in express terms or impliedly, to secure these sureties against the failure of their principal (the Hoffman House) to respond to its obligation. On the contrary, every implication is that the Hoffman House individually, as principal, was able to and would respond, and consequently that, as co-assignee with the others, it took the Mackay judgment just as the assignment reads,—specifically to secure itself. When a principal receives security for his liability, he does not so receive it as trustee for his sureties. He receives it as collateral to his own obligation. He undoubtedly owes a duty to his sureties with respect to the collateral. But what is that duty? In case the principal fails to fulfill his obligation, and the sureties are thereupon compelled to respond, he is bound to subrogate them to his rights with respect to the collateral. Until the duty of subrogation thus attaches, the principal holds the collaterals in his own interest, and in reducing them to possession, or in following their avails, he proceeds in his own right. The relations of the parties throughout are contractual, and their mutual duties, with respect to the collateral, result from well-settled principles of equity. But it is not in every instance where one has an equity in the res that a trust is created with regard thereto. It would be carrying the trust doctrine into the realm of travesty to say that every principal in a bond who is secured by collaterals becomes a trustee for those who have guarantied the fulfillment of his primary obligation. If the principal fulfills, that is the end of the subsidiary guaranty. If he fails, and the sureties then respond, then they are entitled to be subrogated to the collaterals. Even then they take under the equitable rule, and not because the principal was their trustee.

Upon the main question, it is essential that the precise legal status of the parties should be clearly understood. As the Mackay judgment was assigned to the three personalities, not absolutely, but as security for the specified obligations, those three personalities acquired a specific lien thereon, while the residuary interest therein remained in Stokes. In this situation the only trace of a trust was that resulting to Stokes. The three assignees became trustees for him, however, only in the sense in which a pledgee is trustee for his pledgor. Wheeler v. Newbould, 16 N. Y. 398; Gillet v. Bank, 160 N. Y. 560, 55 N. E. 292. These relations were not substantially altered by the payment of the assigned judgment. The proceeds were thereupon substituted as the security. The specified lien of the three assignees was transferred thereto, as was Stoke's residuary interest therein. Again, the assignees became resulting trustees for Stokes, but solely in the pledgor and pledgee sense. It is idle to talk of this as a trust transfer, or as the creation of a trust, in the accepted sense of that term. As was said in Leitch v. Hollister, 4 N. Y. 216: "A trust as to the surplus results from the nature of the security, and is not the object, or one of the objects, of the assignment." In other words, it becomes the assignee's duty, upon the satisfaction of his demand, or extinguishment of his liability, as the case may be, to re-

store the collateral or its proceeds to the assignor, and that duty is in its nature fiduciary. That is the sum and substance of the transaction. The three assignees here were certainly not trustees for themselves. That could not be, and it was not attempted. Their rights under the assignment were not those of trust beneficiaries. They took possession thereunder of the judgment or of its avails, as direct mortgage assignees, and that possession continued for their individual security until their liabilities were extinguished.

The appellant, however, contends that, as between themselves, these co-assignees created a trust in the proceeds of the judgment, which trust went into effect when those proceeds were received by the Hoffman House. There is no force in this contention. The rights of the assignees were not varied by the selection of one of their number to act for all in the collection and application of these proceeds. They did not by that provision, already quoted, cease to be co-assignees of either judgment or proceeds. Surely, this provision did not turn the Hoffman House into a sole trust assignee for the other two, or, rather, into a sole trust assignee for all three. It simply created an agency for their joint convenience. If the three assignees, without disturbing or varying the assignment, had stipulated that A. B., a stranger to the instrument, should collect and receive the amount due on the judgment, and apply it to the extinguishment of their several liabilities, it might with equal force be claimed that their joint possession was thereby devested, and their mortgage lien turned into a trust estate, vested in A. B., as trustee, with themselves as his cestuis que trustent. The fact that one of their number was intrusted with the defined duty of collection and application did not in the least alter the legal status of these assignees with regard to the security or its proceeds. In collecting and applying the proceeds of the judgment under these provisions of the assignment, the Hoffman House would undoubtedly act in a fiduciary capacity with regard to its co-assignees. So, too, would A. B. in the illustration. But that would not create a trust title or representative right of action, in the sense in which the plaintiff here asserts that title and right. It may be that, upon the reduction of the judgment to possession, the Hoffman House, as custodian of the proceeds, had a right of action against one who deprived it of that custody, and that it could have maintained such an action without joining its co-assignees as co-plaintiffs. But, as we have seen, that is not this action, and that fact is emphatically pressed upon us by the appellant. We think, however, it is the appropriate action which the plaintiff had. Even if it were possible— as we think it was not—to sustain its "trustee" position with regard to the other assignees, and if, while the latter's liability existed, the Hoffman House could, upon the assumption of a trust estate, "range over the whole estate for the purpose of its management and disposition" (Woodward v. James, 115 N. Y. 357, 22 N. E. 150), the ranging would certainly cease when nothing was left of the trust save the trustee's individual interest. Then, at least, the trust ended, and the situation which Judge Finch, in the case cited, so happily illustrated, at once arose; and, as two solid bodies can-

not occupy the same space at the same instant, there was nothing left for it but the merger referred to in Greene v. Greene, 125 N. Y. 510, 26 N. E. 739. Were this otherwise, what would be the result? For example, if James D. Leary had been selected as the particular one of the three assignees who should collect and apply the proceeds of the judgment, and if all the other claims save his had been satisfied, what sort of a legal spectacle would be presented by his action as trustee for himself individually to recover the debt due to himself individually? That is the precise legal status of the plaintiff here. And that status is certainly not bettered or rendered less grotesque by the suggestion that this representative action includes in its purpose sureties for the plaintiff's individual obligation, whose liability ceases the moment the recovery is had, and the application of the sum realized thereupon made. However the case may be viewed, the conclusion is inevitable that the plaintiff has no right of action as trustee, and that the nonsuit was correct.

The judgment appealed from should be affirmed, with costs. All concur, except McLAUGHLIN, J., who dissents.

McLAUGHLIN, J. I cannot agree to an affirmance of this judgment. The complaint being dismissed upon the opening of plaintiff's counsel, it must be assumed that every material fact alleged in the complaint and stated in the opening is true. Starting with this assumption, the plaintiff not only had the right to bring the action in the form in which it did, but, I think, it was its duty to do so. The facts, in brief, are these: The Hoffman House of New Jersey (not this plaintiff) had outstanding, prior to the 18th of March, 1895, 425 bonds, of $1,000 each, payment of which was secured by a mortgage upon its corporate property, of which bonds the defendant had 300. Proceedings were instituted to foreclose the mortgage, and the same was prosecuted to judgment, and a sale directed. For the purpose of purchasing the property covered by the mortgage, the defendant caused to be organized this plaintiff, Hoffman House, New York, of which corporation he owned substantially all the stock. This corporation, with a small amount in cash and the 300 bonds held by the defendant, purchased the property covered by the mortgage at the foreclosure sale, an order having been made which permitted the purchase price to be thus paid, provided the plaintiff gave to the referee a bond in the penal sum of $35,000, with sufficient sureties, to be approved by the court, to pay to the referee, "his successors or assigns, upon demand, the cash value of the remaining, to wit, one hundred and twenty-five mortgage bonds of said defendant corporation, as soon as their value can be ascertained, and any further sum or sums which may be necessary to pay under the decree in the aforesaid action." This bond was given by the plaintiff as principal, with James D. Leary and Daniel J. Leary as sureties, and it is still in force. The 125 bonds are still outstanding, and the plaintiff and his sureties on the bond which they gave are still liable to the referee to and for the amount therein stated. On the 18th of March, 1895, one William E. D. Stokes held a judgment rendered in the supreme court in the state of New York

against the defendant for upwards of $30,000, which had been affirmed by the late general term, from which an appeal had been taken, and was then pending in the court of appeals. The defendant was also indebted at this time to one James D. Leary for money loaned in the sum of $25,000, and to indemnify this plaintiff against any loss which it might sustain by reason of its giving the $35,000 bond, and also to indemnify one McDonald and Leary against any loss which they might sustain by reason of becoming sureties for the defendant on the undertaking given by him on appeal to the court of appeals from the judgment recovered by W. E. D. Stokes, and as security for the loan which James D. Leary had theretofore made to the defendant in the sum of $25,000, the defendant, on the 18th of March, 1895, executed and delivered to the plaintiff the following instrument:

"This agreement, made this 18th day of March, 1895, witnesseth: That Edward S. Stokes, of the city, county, and state of New York, has assigned, and hereby does assign, transfer, and set over, unto Ronald T. McDonald, of the city of Fort Wayne and state of Indiana, the Hoffman House, a corporation organized under the laws of the state of New York, and James D. Leary, of the city of New York and state of New York, aforesaid, all that certain judgment entered in the supreme court of the city and county of New York, on the 27th day of February, 1894, in favor of said Edward S. Stokes, and against John W. Mackay and Hector De Castro, being for the sum of ninety-four thousand and six dollars and fifty-three cents ($94,006.53), damages and costs, and the claim and demand represented by said judgment, together with all right of action thereon. This assignment, however, is given for the purpose of indemnifying the said above-mentioned assignees against loss or damage by reason of certain obligations entered into by them as bondsmen or sureties for and at the request of Edward S. Stokes. The said obligations are as follows: (1) To secure the said Ronald T. McDonald and James D. Leary against any obligation or liability that they may now or hereafter be under by reason of their becoming sureties or guarantying sureties upon an undertaking or bond on appeal from a judgment of about forty-three thousand dollars ($43,000) entered in the superior court of the city of New York on or about the ———— day of ————, in a case in which Wm. E. D. Stokes was plaintiff, and said Edward S. Stokes was defendant; (2) to secure the said Hoffman House, incurred or which it may be under by reason of its being a surety or liable in a proceeding in which the Farmers' Loan & Trust Company, as trustee, was plaintiff, and the Hoffman House of New Jersey was defendant, which obligation was for about thirty-five thousand dollars ($35,000) originally; (3) as security, in addition to that now held, for the payment to James D. Leary of the sum of about twenty-five thousand dollars ($25,000), heretofore loaned by him to said Edward S. Stokes, in or about the month of May, 1894. The said judgment and claim is to be collected by, and the money received thereon to be paid over to, the Hoffman House, and by it to be applied to the extinguishment of the said several liabilities above recited, and the surplus, if any, to be turned over to the said Edward S. Stokes, or his assigns or legal representatives. The said Hoffman House is to apply these moneys for the purposes above mentioned, and for the benefit of the said Ronald T. McDonald, the Hoffman House, and James D. Leary, as their interest may appear at the time. In witness whereof the said Edward S. Stokes has hereunto set his hand and seal the day and year first above written.                                    E. S. Stokes.
      "Witness:  Daniel J. Leary.
            "C. C. Gould."

The plaintiff, in pursuance of the foregoing agreement, proceeded to and did collect from the judgment debtors named in the agreement the amount of the judgment therein referred to, and out of the proceeds it paid to Leary the amount of his loan. Subsequently

the judgment held by W. E. D. Stokes was reversed and set aside, and thereupon the defendant, who then happened to be the president of the plaintiff, drew, as such president, a check to himself personally for the balance of the money held by the plaintiff, which it had collected upon the judgment referred to in the agreement, and this action is brought by the plaintiff to compel him to repay to the plaintiff the money thus alleged to have been wrongfully taken from it. It seems to be conceded in the prevailing opinion, as it certainly must be, that the defendant had no right to this money, but it is said that the action must fail because the plaintiff cannot maintain it as a trustee. In the view which I entertain of the action, it matters not whether the plaintiff be called a trustee, an agent, or a custodian of the fund for itself and the other parties named in the agreement of March 18th. It has an interest, no matter what you call it, which enables it to maintain an action against a wrongdoer for the purpose of procuring that which has been wrongfully taken from it.

The agreement authorized the plaintiff to collect the judgment, and to apply it to the extinguishment of the liabilities specified in the agreement, and any surplus that might remain after such extinguishment it was to turn over to the defendant. A portion of the agreement has never been performed. There are still outstanding the 125 bonds referred to, for which the plaintiff and his sureties on the bond which they gave are liable to the referee in the foreclosure action. To indemnify them against loss by reason of this liability the judgment was assigned and the collection made by the defendant, and under this assignment the plaintiff had the right, and it was its duty, to hold the money until the liability had been extinguished. To this extent, at least, a trust was created,— a trust for the purpose of collecting and disbursing in the manner specified in the agreement.

The plaintiff was rightfully in possession of the money collected upon the judgment, which collection it had made, if not at the request, certainly with the concurrence, of the defendant and all of the other parties mentioned in the agreement of March 18, 1895. Being rightfully in possession, it could maintain in a representative capacity, for the benefit of all persons, either directly or indirectly interested in that agreement, an action against any person who wrongfully took from it the money which it held. It would be a sad commentary on judicial procedure if a person could forcibly, or without legal authority, take from another property to which he was not entitled, and then, when called upon to replace it, could shield or protect himself under the thin cover that the action was not properly brought. Any person who is entitled to the possession of property, no matter for what purpose, has sufficient interest therein to enable him to reclaim that which has been illegally taken from him. It could just as well be contended that a lawyer who has made a collection for his client could not, as the representative of his client, maintain an action against a thief who had stolen the money from him, as it can in this case that the plaintiff cannot maintain this

action against the defendant, who took from the treasury of the plaintiff the money which he did.

For these reasons, I am unable to concur in the opinion of Mr. Justice BARRETT. I think the judgment should be reversed, and a new trial ordered.