SPALLHOLZ v. SHELDON.

(Supreme Court, Appellate Division, Third Department.   December 28, 1911.)

1. TRIAL (§ 109*)—DISMISSAL OF COMPLAINT ON OPENING STATEMENT—PLEAD-
   INGS.
   On motion to dismiss the complaint without the opening statement,
   unless it admits plaintiff out of court, the court must consider the com-
   plaint as true, and the answer cannot be considered.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 270, 367, 388, 395;
   Dec. Dig. § 109.*]

2. EXECUTORS AND ADMINISTRATORS (§ 516*)—SETTLEMENT OF ESTATES—DE-
   CREES—FRAUD.
   Where an executor fraudulently converted the property of an infant
   beneficiary, and procured decrees of the Surrogate Court settling his
   transactions, the infant, on attaining full age and discovering the fraud,
   could sue in equity for the fraud and to vacate such portions of the
   decrees as affected the particular transactions attacked.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent.
   Dig. §§ 2199–2207; Dec. Dig. § 516.*]

3. EXECUTORS AND ADMINISTRATORS (§ 516*)—SETTLEMENT OF ESTATES—SET-
   TING ASIDE—LACHES—LIMITATIONS—"COGNIZABLE BY COURT OF CHAN-
   CERY."
   A suit by a beneficiary under a will, based on fraud of the execu-
   tor in converting to his own use the property of the beneficiary, is cog-
   nizable in equity within Code Civ. Proc. § 382, subd. 5, providing that a
   cause of action to procure a judgment on the ground of fraud is not
   deemed to have accrued until the discovery of the fraud, and the fail-
   ure of the beneficiary after attaining full age to discover the fraud for
   several years does not bar a suit brought shortly after the discovery of
   the fraud; the beneficiary being under no duty to the executor to be
   vigilant to discover the fraud.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent.
   Dig. §§ 2199–2207, 2220–2232; Dec. Dig. § 516.*]

Appeal from Trial Term.

Action by Lizzie M. F. Spallholz against Mark L. Sheldon, individ-
ually and as executor of James C. Ferguson, deceased.   From a judg-
ment on dismissal of the complaint on plaintiff's opening, she appeals.
Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON,
SEWELL, and BETTS, JJ.

Visscher, Whalen & Austin, for appellant.

James Gibson, Jr. (William J. Roche, of counsel), for respondent.

BETTS, J.   James C. Ferguson executed a will dated January 24,
1891, in and by which he made the defendant the executor thereof,
and, after two small bequests, left the remainder of his estate to his
daughter, Lizzie May Ferguson, now this plaintiff, who was then an
infant, having been born September 23, 1884.   The will was duly ad-
mitted to probate, and the defendant qualified and acted as executor
of the same until about the year 1899, when he was discharged as ex-
ecutor.   The plaintiff became of full age September 23, 1905, and
in June, 1909, she brought this action, alleging:   That the defendant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made nine several accountings as executor, the most of them without any authority of law, and took and received to himself various sums of money for alleged disbursements which were not in fact made, and for commissions in excess of those allowed by the statute, and for costs and allowances, and for holding and caring for the said estate in excess of any amounts to which he might have been entitled, and many of them entirely without authority of law, as a result of which he illegally transferred to himself of the plaintiff's estate various sums amounting, without interest, to the time that this action was brought, to over the sum of $2,200. That these various sums were illegally obtained, were extortionate, fraudulent to the rights of the plaintiff, and affected a transfer to the defendant without any consideration of property belonging to the plaintiff, and that the several amounts and allowances were obtained as part of a fraudulent scheme of the defendant which existed throughout the whole of his administration of the estate of James C. Ferguson to cheat and deprive the plaintiff of her full right, title, and interest of, in, and to the estate of the deceased. That all of these matters were unknown to the plaintiff until the year 1909, when for the first time she was informed of the said acts and circumstances and brought her action, after having unsuccessfully demanded repayment and restitution of the said sums to her by the defendant, and she asks judgment for the said sums of money with interest, and that such portions of the surrogate's decrees as purports to sanction the granting and allowing of the said sums of money be vacated and set aside. The defendant answers, denying any fraudulent acts, and alleges the statute of limitations as a bar to the action. The answer of the defendant also sets forth in full the decree of the Surrogate's Court dated February 24, 1899. The case came to trial, and, after the opening address to the jury of plaintiff's counsel, of which the only record is a stipulation as follows: "The plaintiff's counsel, among other things, stated that this action was brought to recover various sums of money, and, as an incident thereto, to vacate so much of the surrogate's decrees mentioned in the complaint as constitute a bar to such recovery, and that he would offer in evidence the several accounts and decrees filed in the Surrogate's Court, and which were referred to in the complaint"—the complaint was dismissed on the complaint and the opening.

[1] The complaint having been dismissed without a trial and with only the meager statement of what was stated by the plaintiff's attorney, if in such opening he did not admit his client out of court, the complaint must on this motion be considered as in all respects true, and in my opinion the answer cannot be considered at all. It is strongly contended by the defendant that, since the pleadings are always before the court upon the trial, the answer with the alleged copy of the decree of the Surrogate's Court must be considered as before the judge when he made the decision appealed from. There are several answers to that. One is that no trial was had, simply an attempt to begin one. Second. The trial judge declined to consider the answer as before him in deciding the motion. Third. There was no evidence before the court, and it was not admitted by the plaintiff,

that the copy of the decree attached to the answer was a true copy. Fourth. The defendant could not begin to try his part of the case first by introducing this decree in evidence, and indeed he made. no attempt so to do, so I think we must hold as did the trial judge that the answer was not considered by the court in his decision of the motion, and that all that was before the court and is before us are the complaint and the short stipulated opening.

[2] Assuming that to be correct, we have a case where, under the forms of law, it is alleged that property amounting to over $2,200 was taken from an infant by the executor of her father's will illegally and unlawfully, and in pursuance of an apparent fraudulent intention by the executor to convert the infant's property to his own use; that she did not learn of this fraud or of these acts until 1909, when, after demanding restitution, she promptly brought this action. It is alleged here that these various decrees are bars to the recovery by the plaintiff in this court, and that this court has no authority to set aside a decree of the court which had jurisdiction of the person of the plaintiff and of her property at the time such decrees were made. It is answered that it is only attempting and intending to vacate such portions of such decrees as affect the particular transactions in question; that, being fraudulently secured, the fraud vitiated the entire decree; and that the question could be raised collaterally, and determined in this equity branch of the Supreme Court.

In Hoffman House v. Foote, 172 N. Y. 348, 65 N. E. 169, reversing 50 App. Div. 163, 63 N. Y. Supp. 784, the syllabus states:

"On appeal from a judgment dismissing the complaint at the close of the plaintiff's opening address, every material fact in issue will be resolved or found in his favor."

In Warren v. Union Bank of Rochester, 157 N. Y. 259, 51 N. E. 1036, 43 L. R. A. 256, 68 Am. St. Rep. 777, a general guardian under the forms of law had mortgaged certain real estate of his ward in a proceeding brought to obtain money to pay the alleged debts of the infant. The proceedings were carried through, the mortgage was executed, and the money applied upon the debt created by the general guardian. Some time afterwards it was learned that the debt was not in any sense a debt of the infant, but that of his general guardian. Whereupon in an equity action brought on behalf of the infant the mortgage proceeding was vacated and set aside.

[3] It is also claimed by the defendant that the plaintiff unreasonably delayed the bringing of this action, even if for the sake of argument it might be conceded that she might properly have brought the same immediately upon becoming 21 years of age, and that hence the action cannot be maintained on account of plaintiff's laches. In other words, the defendant claims that, if there was any fraud, the plaintiff owed it to the person who committed the fraud to have discovered and exposed the fraud at an earlier day than she alleged she did in fact discover it. I think that the plaintiff owed the defendant no duty of active vigilance in that regard. See Baker v. Lever, 67 N. Y. 304, 23 Am. Rep. 117, affirming 5 Hun, 114, and the cases there cited. The syllabus is:

"Where a vendee has been induced to purchase property by means of fraud on the part of the vendor, mere want of diligence in discovering the fraud does not deprive the vendee of his right to rescind because thereof. He owes the fraudulent vendor no duty of active vigilance, and, if he acts promptly after actual discovery of the fraud, he has a perfect right to rescind."

On page 309 the court says:

"We have been referred to the dicta of judges where the doctrine is laid down that the rescission must be made after the party has had reasonable opportunity to discover the fraud, and that vigilance and care must be exercised. . * * * But these cases must be considered in connection with the facts there presented, and do not establish any general rule applicable to all cases."

I think, therefore, the plaintiff lost no rights, if any she had, by her delay in bringing this action.

As to the statute of limitations. Section 382 of the Code of Civil Procedure, so far as material, is as follows:

"Sec. 382. Within six years. * * * (5) An action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case which, on the thirty-first day of December, 1846, was cognizable by the Court of Chancery. The cause of action, in such a case, is not deemed to have accrued, until the discovery, by the plaintiff, or the person under whom he claims, of the facts constituting the fraud."

Thus, if such an action was cognizable by the court of chancery in 1846, this action is timely brought. Miller v. Miller, 1 Sandf. Ch. 103, was decided in August, 1843. . The first paragraph of the syllabus is as follows:

"The jurisdiction of the Court of Chancery to set aside decrees obtained by fraud, on an original bill filed for that purpose, has long been unquestioned."

This case was affirmed by the Court of Appeals in 8 N. Y. 9, 59 Am. Dec. 438.

In Bosley v. National Machine Company, 123 N. Y. 550, 25 N. E. 990, the action was brought to set aside a subscription of stock made by the plaintiff, claimed to have been secured by fraud, or false representations made by the agent of the defendant, and the plaintiff asked to have the contract rescinded, and she tendered a surrender of her stock and the dividends received and the interest thereon, and asked to have her money refunded and her name taken from the list of stockholders of the defendant, which relief was granted to her. Upon page 554 the court says:

"The action was commenced within a few months after the discovery by the plaintiff of the fraud, but more than seven years after the fraud was practiced upon her, and she was induced to subscribe and pay for the stock. It is claimed on the part of the defendants that this action comes under subdivision 3 of section 382 of the Code, and that the cause of action was, therefore, barred after six years. But the plaintiff claims that it comes under subdivision 5 of that section, which is as follows: 'An action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case which on the 31st day of December, 1846, was cognizable by the Court of Chancery; the cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud.' In order to subject an action to the operation of subdivision 5, it is not needful that its purpose is solely

to procure a judgment other than for a sum of money. It covers all cases formerly cognizable by the Court of Chancery, whether its jurisdiction therein was exclusive or concurrent with that of courts of law, in which any remedy or relief is sought for aside from, or in addition to, a mere money judgment, and which a court of law could not give, although as part of the relief sought a money judgment is also demanded. Carr v. Thompson, 87 N. Y. 160."

It was held that the action was timely brought. See, also, Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, 29 L. R. A. (N. S.) 119, 139 Am. St. Rep. 817.

I think that subdivision 5 of section 382 of the Code of Civil Procedure applies to this case. It may very well be that upon a trial of this action, if it be had, it will appear that no fraudulent acts were in fact committed by the defendant, but they are here charged, and we are dealing with these charges as being true.

It follows that the judgment of the Trial Term should be reversed and new trial granted, with costs to the plaintiff to abide the event. All concur, SMITH, P. J., and KELLOGG, and HOUGHTON, JJ., in result.